Jerome W. Marks, J.
Plaintiff sues defendant stock brokerage company, a member of the New York Stock Exchange to recover the sum of $8,200. Plaintiff moves for summary judgment, claiming that the stock he ordered has never been delivered to him, although he had made numerous demands therefor.
Plaintiff alleges that he placed an order with defendant for the purchase of 1,200 shares of the stock of Bartep Industries, Inc., on November 27, 1968. The stock was then traded in the ‘ ‘ over-the-counter ’ ’ market and not on any of the national securities exchanges.
The settlement date of plaintiff’s trade or transaction with defendant was -December 5, 1968. It appears from defendant’s *124 papers in opposition to this motion, that defendant did on November 27,1968, place an order for the purchase of this said stock from two different brokers —800 shares at 6% with the Lockwood & Company and 400 shares at 6% with I. J. Schenin & iCo. Confirmations of this transaction were sent to plaintiff.
Physical delivery of the stock has never been made to plaintiff and it is undisputed that plaintiff made numerous but fruitless demands for the stock. The earliest demand for delivery •of the stock to him was made by plaintiff as of December, 1968, within one month after his purchase order.
On February 19, 1969, the Securities and Exchange Commission ordered that trading in the stock of Bartep Industries, Inc., cease.
The order disclosed to defendant that the president of Bartep had met with sudden death in an aviation accident, and in addition thereto defendant had also been informed by the Securities and Exchange Commission’s release that stockholders of Bartep had not been provided with the required current financial statements of the company and for three companies acquired by Bartep. For these reasons the commission determined to suspend trading in the stock “pending public dissemination of adequate financial statements for Bartep Industries, Inc.”
Defendant’s house counsel states in his opposition affidavit that the Securities and Exchange Commission continually renewed the trading ban through the close of business July 18, 1969. The Security and Exchange Commission’s release dated July 10, 1969, revealed to defendant that Bartep’s assets consisted of $71.89 in cash, $9,100 receivable from a stockholder and an interest in a Utah Corporation, value of which was unknown. Bartep’s debts totaled $113,071.90. The release warned broker-dealer firms to make full disclosure of all material facts in connection with Bartep transactions and to he mindful of their responsibilities to the investing public.
As of the date of the last S. E. C. release (July 10, 1969) the Bartep stock had not yet been delivered to plaintiff. On July 30, 1969 plaintiff’s lawyer by a formal letter addressed to defendant canceled plaintiff’s purchase order of the stock.
Up to the date of July 30,1969 (plaintiff’s cancellation letter) neither Lockwood & Co. nor I. J. Schenin Co. had delivered the Bartep stock to defendant.
Plaintiff asserts that at the various times he made demand upon defendant for physical delivery of the stock, he was informed by various members of defendant’s staff that defendant had possession of 400 shares of Bartep. This has not been denied by defendant. That defendant did not have in its posses *125 sion at said time or times 400 shares of the stock, is fortified by the fact that delivery of some part of plaintiff’s purchase order was not made to defendant until August, 1969. Between August 15, 1969 and October 17, 1969, defendant was able to acquire only 1,000 shares of plaintiff’s purchase order of 1,200 shares.
Defendant now holds 1,000 shares and $1,375 of plaintiff’s money. Defendant maintains that it is not at all liable to plaintiff for the reason, that having received confirmation of plaintiff’s order from the selling brokers and also having confirmed the trade to plaintiff (Nov. 27, 1968), an executed purchase of the stock took place, at which time plaintiff could have sold off the stock without the necessity of having physical possession of the stock certificates. And defendant urges this is so by reason of the rules and regulations of the National Association of Security Dealers (NASD).
At the time of plaintiff’s purchase order the market price of Bartep varied between 6% and 6%. Defendant now states that at the time of the last purchase by defendant of the stock, the market price thereof was 1%.
Defendant states that pursuant to the rules of NASD the buying broker is required to pay the selling broker the price of a share of stock on the day of the purchase order, even though at the time of delivery thereof to the buying broker (eight months in this case) the market price per share of stock decreased in value.
Defendant pleads that it is not responsible to plaintiff upon the ground that at the time plaintiff opened his trading account with defendant (Feh. 15, 1966) he signed a customers’ agreement by the terms of which he agreed as follows:<c 1. All transactions under this agreement shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by you or your agents, and, where applicable, to the provisions of the Securities Exchange Act of 1934, the Commodities Exchange Act, and present and future acts amendatory thereof and supplemental thereto, and the rules and regulations of the Federal Securities and Exchange Commission, the Board of Governors of the Federal Reserve System and of the Secretary of Agriculture in so far as they may he applicable.”
Defendant maintains that by reason of this customer’s agreement, plaintiff is also bound by the rules and regulations of NASD.
A reading of the customer’s agreement reveals that no mention is made therein of the rules and regulations of NASD and it matters not that in this stock transaction, defendant and the *126 selling brokers agreed to be bound by the rules and regulations of NASD. Plaintiff is not at all bound by such rules and regulations (Hyman v. Sachs, 194 Misc. 69, affd. 275 App. Div. 804, affd. 300 N. Y. 499). NASD is a self-regulatory membership corporation, supervising the activities of its broker-members. Plaintiff is not subject to any rule or regulation promulgated by this association. See paragraph 3501, section 1(a) of this association’s Uniform Practice Code, which provides that in all “ over-the-counter ” transactions between its members, they are subject to the provisions of the code “ unless the parties (members) agree that certain or all sections of the Code shall not pertain.” A truly flexible practice promulgated solely for the protection of its members. No customer of any of these brokers could be expected to be bound by a code which can be changed at will by NASD members. The rules and regulations of this membership corporation and its Uniform Practice Code are neither a custom nor a usage which may be imposed upon plaintiff. What is sought to be enforced is not a practice resulting from a course of dealing. Defendant endeavors to impose upon plaintiff the rules of a supervisory body (Hyman v. Sachs, supra). A custom or usage must be so general that a presumption of law will arise that everyone knows of it and contracts with reference to it (Fireman’s Fund Ins. Co. v. American Merchant Mar. Ins. Co., 211 App. Div. 93-95). It is plain that plaintiff never agreed to be subject to NASD rules and regulations. That which NASD promulgates is neither a custom nor a usage which formed part of plaintiff’s transaction with defendant.
Defendant maintains further that the transaction between plaintiff and defendant was executed and completed on November 27, 1968, the date of plaintiff’s purchase order or in any event when defendant issued to plaintiff its confirmation of the purchase by plaintiff of the Bartep stock. This is not so. Section 8-313 of the Uniform Commercial Code provides:
“ (1) Delivery to a purchaser occurs when
(a) he or a person designated by him acquires possession of a security; or
(b) his broker acquires possession of a security specially indorsed to or issued in the name of the purchaser; or
(c) his broker sends him confirmation of the purchase and also by book entry or otherwise identifies a specific security in the broker’s possession as belonging to the purchaser; or
(d) with respect to an identified security to be delivered while still in the possession of a third person when that person acknowledges that he holds for the purchaser; or
*127 (e) appropriate entries on the books of a clearing corporation are made under Section 8-320.”
Delivery to plaintiff never occurred. No person designated by him acquired possession of the stock; if defendant acquired the stock indorsed to or issued in the name of the purchaser, this occurred after July 30, 1969, the date plaintiff canceled his purchase order; the mere sending of the confirmation order by defendant to plaintiff under the facts of this case was not a delivery to plaintiff of the stock. Prior to July 30, 1969 there never was a truthful acknowledgment of possession of Bartep stock by a third person for the benefit of plaintiff. There is no proof that prior to July 30,1969 appropriate entries were made of this transaction on the books of a clearing corporation.
Section 8-313 of the Uniform 'Commercial Code contemplates a confirmation of an actual and valid purchase of Bartep stock on November 27, 1968 pursuant to plaintiff’s purchase order. No such purchase of stock was made here by defendant on said date. Defendant’s purchase of the Bartep stock was made between the dates of August 15 and October 17,1969. This was after the S. E. C. order of July 10,1969 at which time defendant was warned of Bartep’s questionable financial status and S. E. C.’s significant direction to defendant to he wary of trades in the stock. Heedless of this pointed caution, defendant, nevertheless, made purchase of the subject stock after July 30, 1969, the date of plaintiff’s notice to cancel his purchase order.
To give support to defendant’s contention that a consummated purchase occurred on November 27,1968 when defendant issued its confirmation to plaintiff is to give fruition to a transaction that is untrue and without validity and to have the courts enforce a fiction. This cannot be said to be the intention of the Legislature. “Delivery” within the terms of the statute means delivery of stock that is actually ready for transfer to the buying broker so as to enable him to issue for transfer to the purchaser-customer a confirmation of the purchase and arrange for the subsequent transmission of the stock to the purchaser-customer within a reasonable time after the purchase order. This is not the fact here. The Bartep stock may have been in esse, but it was not so on November 27, 1968 for the defendant and the selling brokers.* Possession of the stock was *128 not in them or either of them until after a long and unreasonable length of time — some eight months after plaintiff’s order of purchase (Nov. 27,1968). Under these circumstances defendant wrongfully issued its confirmation on November 27, 1968. Hence there was no delivery to plaintiff within the terms and meaning of the Uniform Commercial Uode (§ 8-313).
This court is not unaware of the large volume of trading and stock transactions on the Wall Street exchanges which occurred in 1968. The court is not unmindful of the enormous amount of paper work required as of this day to effectuate the delivery of stock certificates to customers.
The failure to deliver the Bartep stock to plaintiff within a reasonable time after his purchase order (Nov. 27, 1968) was not due to the inadequacy of manpower. The fact is that no actual purchase of the stock had been made on November 27, 1968. The purchases occurred between August 15, 1969 and October 17, 1969 and no delivery was made in accordance with the terms of plaintiff’s purchase order.
Defendant also contends that plaintiff’s cause of action should be against the selling brokers. For this there is no basis in law or fact. Plaintiff’s broker is defendant. The responsibility to plaintiff is defendant’s. In John J. Reynolds Inc. v. Snow (11 A D 2d 653, affd. 9 N Y 2d 785) it was held that a broker “ was required to exercise the utmost good faith and loyalty and not act in any manner inconsistent with its agency or trust (Lamdin v. Broadway Surface Adv. Corp., 272 N. Y. 133; Wendt v. Fischer, 243 N. Y. 439).”
On July 10, 1969, defendant was notified by the terms of the S. E. '0. release that Bartep’s assets were practically nil and that it was heavily indebted. The Securities and Exchange Commission cautioned defendant and other broker-dealers to be “ especially mindful of their responsibilities under Federal securities laws for full disclosure of all material facts in connection with the execution of transactions in Bartep. ’ ’
Notwithstanding this warning, this direction by S. E. C., defendant declined to obey plaintiff’s notice .(July 30, 1969) to cancel the purchase order, but instead proceeded to execute and deliver buy-in notices to the selling brokers and defendant paid out plaintiff’s money for stock in a corporation whose financial structure was doubtful and at a price of 6% or 6% for stock then selling at 1%. This defendant thus failed to exercise the utmost good faith and loyalty required by this sensitive fiduciary relationship. (John J. Reynolds, Inc. v. Snow, supra). ‘ ‘ Many forms of conduct permissible in a workaday world for *129 those acting at arm’s length, are forbidden to those bound by fiduciary ties ” (Meinhard v. Salmon, 249 N. Y. 458, 464).
Defendant as a practicing stock brokerage company operates subject to chapter 2B of title 15 of the U. S. Code. This protective legislation, the Federal securities laws were enacted to protect the investor, including the uninformed, the ignorant and gullible (Surowitz v. Hilton Hotels Corp., 342 F. 2d 596, 602; Berko v. Securities Exch. Comm., 316 F. 2d 137, 141). But defendant refused and failed to give to its client, the plaintiff, the required protection demanded of defendant in the S. E. C. release of July 10, 1969.
The defendant, on these motions, has failed to interpose any issue of fact which prima facie absolves it from responsibility to plaintiff and which would warrant a trial.
In view of this, defendant’s motion for summary judgment is denied; plaintiff’s motion for summary judgment is granted and the clerk is directed to enter judgment in plaintiff’s favor against defendant for the sum of $8,200 together with appropriate interest. If defendant be so advised, defendant may proceed with its ‘ ‘ complaint in interpleader ’ ’ against Lockwood & Co., and I. J. Schenin and I. J. Schenin & Company.

 The fact of the matter is that at no time did either the defendant or the selling brokers have the 1,200 shares available as stated in the confirmation sent by defendant to plaintiff. The plain truth is that the selling brokers were able to produce but 800 shares of plaintiff’s purchase order and this was on or after August 15, 1969. Defendant, trying to fill plaintiff’s purchase order could buy only another 200 shares after said date in the open market and were unable to buy the remaining 200 shares from any source.