Joseph P. Sullivah, J.
Plaintiff sues to recover his investment of $1,950 in the purchase of 100 shares of common stock of Inter American Industries, Ltd. This stock was purchased for plaintiff’s account on May 12,1967 by defendant, plaintiff’s stockbroker. Seven days thereafter, the Securities and Exchange Commission temporarily suspended all over-the-counter trading in the stock.
For reasons hereinafter discussed defendant did not deliver stock certificates for these securities to plaintiff until October 24, 1967, at which time the stock was virtually worthless. Insofar as the record discloses the suspension order was in effect throughout all of 1967.
It is plaintiff’s contention that, as a result of this delay of over five months in delivery, he was deprived of the benefit of a sale of this stock to a third party, a sale by which plaintiff claims he would have recouped his investment. Plaintiff contends that it was a condition to this sale that he deliver the stock certificates in his name to the prospective purchaser and that without such delivery the sale could not be realized and his investment recovered.
It was shown at trial that in a situation such as here where the transaction was entered into prior to the suspension order the Securities and Exchange Commission has no objection to a broker’s completion of his contractual obligation (e.g., by payment or delivery) while the suspension is in effect.
Although defendant, at trial, assigned other reasons to justify its failure to deliver the certificates, the fact is that defendant, at the time it was resisting delivery, maintained that until the Securities and Exchange Commission lifted the suspension no delivery could be made. On the basis of the record made here, defendant, in taking such a position, was clearly in error.
It is on this mistaken view by defendant of Securities and Exchange Commission policy that plaintiff pegs his case in seeking recovery on alternate legal grounds. Plaintiff originally *107 pleaded a cause of action in conversion based on defendant’s wrongful and unlawful withholding of the certificates. At the close of all the evidence, plaintiff moved to add an action at law based on rescission.
As the court sees this case, plaintiff, notwithstanding defendant’s mistake as to Securities and Exchange Commission policy, is not entitled to recover, whatever the legal theory.
In seeking recovery on rescission plaintiff misperceives his legal relationship to defendant. The latter was his agent in the purchase of the stock in question, not the seller, and if the purchase was completed by defendant in plaintiff’s behalf, as purchaser, there is no basis for rescission. This is not to say, of course, that plaintiff is without a remedy against defendant for the latter’s dereliction in delivery of the certificates after the purchase was made.
The proper remedy of a principal against an agent who performs an authorized act in a manner other than as specifically directed is an action in damages for breach of contract (Minneapolis Trust Co. v. Mather, 181 N. Y. 205) or if an agent performs an act entirely different from that which he was directed to do, the principal’s remedy is an action in conversion (Laverty v. Snethen, 68 N. Y. 522).
In this connection the court finds as fact that the first demand for the certificates was plaintiff’s letter of August 28, 1967, written three months after purchase. The court finds that the earlier telephone inquiries by plaintiff had to do with ascertaining whether the suspension had been lifted. Beginning in August of that year, the inquiries related to whether defendant would refund plaintiff’s cash investment in the stock. The latter inquiries were prompted by certain newspaper accounts of the suspension, which understandably achieved a measure of publicity. At this juncture, it is significant to note that the account executive for defendant with whom plaintiff dealt did not in any way solicit this particular transaction and in fact attempted, unsuccessfully, to discourage plaintiff from the purchase.
Furthermore, plaintiff, who was a regular customer of defendant, maintained a hold account (e.g., hold securities in safekeeping). In such circumstances then, until demand was made on August 28, 1967, delivery of the certificates was not required or even contemplated. Until such demand, defendant was acting in accordance with its retainer.
There is no evidence that the subject stock had any value after August 28, 1967. Consequently, plaintiff is unable to *108 show damages flowing from any delay in delivery for which defendant may be held accountable.
Furthermore, even were the court to accept the claim that plaintiff requested delivery of the certificates, prior to August 28, 1967, plaintiff’s testimony of an offer by a third party to buy this stock in June and July of 1967 at a figure approximating his purchase price is lacking in probative force. This evidence must be viewed in the light of the absence of corroborating testimony from the prospective buyer and in the context of other events contemporaneous to such alleged offer. When so viewed, this tale of an offer has the savor of an afterthought.
Plaintiff places great emphasis on the case of Shaw v. Dreyfus & Co. (64 Misc 2d 122). That case turned on a timely cancellation of the purchase order. In urging rescission on this court, plaintiff may well have in mind cancellation. However, the cases are distinguishable. In Shaw, the demand for delivery took place well before suspension so that the brokér was in default in its duty to deliver at a time when the stock was unaffected and unimpaired by suspension. But, most importantly, notice of cancellation of the purchase order was given before the defendant broker ever acquired the stock. That being so, any post-cancellation acquisition of stock in contravention of the customer’s instructions, the court concluded, should not be for the customer’s account.
In the case at bar, the letter of August 28, 1967 could not effectively serve as a cancellation of the purchase order because by that time the purchase was completed (Markham v. Jaudon, 41 N. Y. 235, overruled on other grounds; Baker v. Drake, 53 N. Y. 211) even though, legally, no delivery of the stock to plaintiff, constructive or actual, had been made (Uniform Commercial Code, § 8-313; Shaw v. Dreyfus & Co., supra).
The evidence here is that the subject stock was in plaintiff’s account under defendant’s bulk segregation system from May 12, 1967, the date of defendant’s confirmation notice, whereas in Shaw (supra) the court found the purchase, as evidenced by only the defendant broker’s notice of confirmation, to be a legal fiction because of its nonacquisition of the stock. Any attempted cancellation of the purchase order by plaintiff on August 28,1967 was too late to be effective in the circumstances presented here.
In view of the foregoing, the complaint is dismissed.