**DOYLE DANE BERNBACH, INC., Plaintiff,**

v.

**Warren E. AVIS, Teleflorists International, Inc. and Avis Flowers, Inc., Defendants.**

**79 Civ. 1489 (KTD).**

United States District Court, S. D. New York.

Oct. 21, 1981.

**118**

Davis & Gilbert, New York City, for plaintiff; Richard H. Waxman, Patricia Hatry, New York City, of counsel.

Saxe, Bacon & Rolan, P. C., New York City, for defendants; Roy M. Cohn, Louis Biancone, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

This is a diversity action for breach of contract. Plaintiff, Doyle Dane Bernbach, Inc. ["Doyle Dane"], seeks to recover $126,729.57 for advertising services rendered to defendants Warren E. Avis and Avis Flowers, Inc. pursuant to an oral advertising agreement between the parties. This agreement essentially provided that Doyle Dane would develop and carry out a national advertising campaign with an initial budget of $500,000. In consideration, defendants agreed to pay Doyle Dane all commissions and fees customarily charged in the advertising industry. Doyle Dane commenced this suit to collect allegedly unpaid commissions and fees. The defendants interposed as a defense and counterclaim the assertion that Doyle Dane wrongfully terminated the agreement which, according to defendants, led to the demise of Avis Flowers, Inc. A non-jury trial was held before me on November 24 and 25, 1980. The following shall constitute my findings of fact and conclusions of law.

### I.

Plaintiff Doyle Dane is a Delaware corporation with its principal place of business in New York. It is engaged in the business of providing advertising and related marketing services to its clients. Defendant Warren E. Avis is a Michigan resident who maintains an office in New York. In November, 1977, Mr. Avis incorporated in Michigan an entity called Avis Flowers, Inc. ["Avis Flowers"] which was in the business of selling and delivering flowers to consumers. The company accepted purchase orders for flowers which were to be delivered locally, interstate or internationally. An integral part of the Avis Flowers business was a nationwide toll free telephone number for consumers to place orders seven days a week, twenty-four hours a day. Once received by Avis Flowers, an order was then routed to one of 1,500 florists across the country for delivery. These orders could be billed over the phone on major credit cards.

Defendant Teleflorist International, Inc. ["Teleflorist"] is a corporation with its principal offices in Redondo Beach, California. It functioned as the fulfillment house for flower purchase orders secured by Avis

Flowers. Teleflorists, through its network of florists, provided operational and delivery services for Avis Flowers. Evidently, policy differences led to the termination of this relationship sometime in November, 1977.

It was clear from the evidence produced at trial that the business of Avis Flowers depended largely on its ability to attract flower purchasers by advertising nationally. To establish this national campaign, Mr. Avis, on behalf of defendant Avis Flowers, entered into an oral agreement with Doyle Dane in May, 1977, to develop and carry out a national advertising campaign. Joseph R. Daly, Chairman and Chief Executive Officer of Doyle Dane, as well as other officers of Doyle Dane, entered into this oral agreement on behalf of Doyle Dane. The essential terms of this agreement was for Doyle Dane to prepare, produce and place Avis Flowers advertisements within an initial budget of $500,000. Doyle Dane typically did not handle advertising campaigns of less than $2 million. Here, however, it was felt that Avis Flowers had the potential to become a much larger account in the near future.

After a period of planning with Warren Avis, Doyle Dane prepared and placed advertising for Avis Flowers from September through December, 1977, at a cost of $455,-010.17. Full-page Avis Flower ads were placed in such magazines as *Sports Illustrated, Time, Newsweek, People* and *Travel & Leisure.* Billboard ads were also produced. Plaintiff was paid for these services the sum of $328,280.65, a portion of which was for production invoices which included a 17.65 percent commission to plaintiff. There is no specific proof that the parties agreed to this rate of compensation for Doyle Dane. It is the practice in the advertising trade, however, for agencies to retain a 15 percent commission on the gross price charged by media for all broadcast time and print media space purchased on a client's behalf. On net production charges, the customary commission is 17.65 percent (which is 15 percent of the gross cost). *See Columbia Broadcasting System, Inc. v. Stokely-Van Camp, Inc.,* 522 F.2d 369, 371 (2d Cir.

1975). The billings sent by plaintiff to defendants clearly stated the amounts of the commission. At no time did defendants dispute this rate of compensation.

This suit had its genesis in a telephone call from Joseph Daly to Warren Avis on July 29, 1977, in which Avis was informed that the parties relationship would be terminated within 90 days. The reason for this unilateral termination of the agency contract was that Doyle Dane had been advised by another client, Avis Rent-A-Car, that Avis Rent-A-Car would use another advertising agency if Doyle Dane continued to service Avis Flowers. It appears that not only the consuming public but the advertising industry as well assumed that Avis Rent-A-Car was affiliated with Avis Flowers. *See, e. g.,* Plaintiff's Ex. 18. In fact, however, although Warren Avis was the founder of Avis Rent-A-Car, it had long ago been sold to a conglomerate. When faced with a choice of retaining the cars or the flowers as objects of their creative talents, the plaintiff chose the former. From an economic standpoint, the choice was clear: Avis Rent-A-Car represented millions of dollars in present billings in comparison to the $500,000 Avis Flowers' budget.

Soon after the notice of termination was given, Warren Avis was contacted by officers of Doyle Dane regarding a transfer of Avis Flowers' ad campaign to another agency. In fact, Alan Pando, an officer of Doyle Dane, had lunch with Mr. Avis on August 4 to discuss the topic. Mr. Pando thereafter sent several letters to Mr. Avis. Despite the termination, Doyle Dane continued to provide advertising services. In fact, as late as December, 1977, Doyle Dane placed an ad in *People* magazine.

By letter dated March 29, 1978, plaintiff notified Sidney McNiece, president of Avis Flowers, that there was an open balance of $126,909.68. Additional notices were sent in April and May but no payment was forthcoming from defendants. This led Joseph Daly on January 19, 1979, to write a letter to Warren Avis to urge payment. This lawsuit ensued.

Defendants have alleged that Doyle Dane's termination of the contract was wrongful. Defendants urge that the parties agreed that Doyle Dane would furnish its services until such time as the initial advertising campaign was complete. An essential ingredient of this campaign and the focus of the "flower by phone" concept included nationwide advertising nationwide in the yellow pages. According to defendants, the plaintiff's actions prevented them from placing a national yellow page ad for the year 1978 and resulted in defendants' failure to consummate arrangements with its nationwide network of licenses. Defendants urge that plaintiff is liable for damages for breach of their oral agreement.

## II.

Under New York law, Doyle Dane could be found to have anticipatorily breached the advertising agreement, thereby entitling the defendants to claim damages for total breach. *Long Island Railroad Co. v. Northville Industries Corp.*, 41 N.Y.2d 455, 393 N.Y.S.2d 925, 362 N.E.2d 558 (1977). This argument falls, however, if the 90 day notice provision invoked by the plaintiff was a term in the contract. It is clear that the parties did not explicitly agree to such a provision. In fact, no mention of the duration of the contract or condition for its termination were ever made. Such ambiguity in the express terms of a contract may be resolved by looking to the custom and usage in the trade. *See Schubtex, Inc. v. Allen Snyder, Inc.*, 49 N.Y.2d 1, 424 N.Y.S.2d 133, 399 N.E.2d 1154 (1979). Such a trade custom, however, must be so universal as to create a presumption that everyone knows of the custom and contracts with reference to it. *See Shaw v. Dreyfus & Co.*, 64 Misc.2d 122, 314 N.Y.S.2d 372 (1969). "A party cannot be bound by

usage unless he either knows or has reason to know of its existence and nature." Restatement (First) of Contracts § 247, comment b. In this case, Mr. Pando, an officer of plaintiff, admitted that Mr. Avis was not directly told by Doyle Dane of the 90 day notice provision until he was actually given that notice. The question thus is whether the defendants had any reason, thru customs of the trade or otherwise, to know of this notice provision. Nothing in the record indicates that Mr. Avis had regular dealings with the advertising industry or prior experience with advertising contracts. The only evidence introduced by plaintiff on this point is that in the industry, 90 day notice is customary even where it is not explicitly provided for in a contract. Plaintiffs have not sustained their burden of proof, however, to show that defendants had reason to know of this custom. *See, e. g., Flower City Painting v. Gumina Const. Co.*, 591 F.2d 162 (2d Cir. 1979).

This leads to the basic question of whether the oral contract was breached. Central to this question is determining the duration of the agreement. As earlier stated, the agreement was silent as to duration. It is clear, however, that the $500,000 budget agreed upon was only for 1977, although Doyle Dane at the time of contracting hoped for a long-term relationship with Avis Flowers.[1] From the evidence adduced at trial, it appears that the plaintiff fulfilled the obligation under the oral contract through the end of 1977 and nearly expended the projected budget of $500,000. Although Doyle Dane announced its withdrawal as agent in July, 1977, it continued to provide services and charged fees up to $455,010.17. The failure to place the yellow page ad does not in itself indicate plaintiff's breach of the contract; there was no such requirement proven by defendants to be a

1. The fact that the agreement to provide a $500,000 ad campaign could have been performed within one year brings this oral contract out from under the requirements of New York's Statute of Frauds. *See North Shore Bottling Co., Inc. v. C. Schmidt and Sons, Inc.*, 22 N.Y.2d 171, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968). This holds even if the contract were construed to extend for so long as it took to make Avis Flowers a nationwide success. Such success could have been achieved within one year. If the contract could be construed as coming within the Statute of Frauds, the defendants' counterclaim would fall completely and only plaintiff's claim in equity to recover in *quantum meruit* would remain.

part of the oral agreement between the parties. In any case, between July and December of 1977, defendants had many opportunities to make arrangements to continue their ad campaign through 1978 with another agency. Defendants did not take any action regarding plaintiff's purported anticipatory repudiation of the agreement. In fact, the evidence shows that the plaintiff continued to perform under the contract which, in essence, retracted the repudiation.[2] The defendants thereafter accepted additional services from the plaintiff, and it appears plaintiff substantially provided what they agreed to provide. Defendants did not seek legal redress against plaintiff until more than eight months after notice of termination was given and only after the plaintiff brought this suit to collect unpaid fees. In sum, the defendants do not appear to have been damaged by plaintiff's alleged repudiation. Any damage sustained by defendants by the lack of a 1978 ad campaign resulted from their own actions. The original agreement, by all indications, was not clearly meant to run beyond 1977. It appears that the parties intended to agree at a later time on whether to continue the agreement and, if so, upon what terms. Accordingly, on the record before me, defendants do not have adequate grounds for their failure to pay for services. Judgment will enter in favor of the plaintiff with interest to run from the date the amount for unpaid services became due.

Settle order.

2. *Cf.* N.Y.U.C.C. § 2–612 (repudiating party may reinstate contract provided the aggrieved party has not cancelled the contract or materially changed his position at any time after repudiation). Because this case does not involve a sale of goods, the applicability of the U.C.C. is by analogy only. *See Schenectedy Steel Co., Inc. v. Bruno Trimpoli General Const. Co., Inc.,* 43 A.D.2d 234, 350 N.Y.S.2d 920 (3rd Dep't), *aff'd,* 34 N.Y.2d 939, 359 N.Y.S.2d 560, 316 N.E.2d 875 (1974).