PROPERTY ADVISORY GROUP, INC.,
and Fidelity Service Corporation,
Plaintiffs,

v.

Gus BEVONA, President, Local 32B–32J
Service Employees International Un-
ion, and the Realty Advisory Board on
Labor Relations, Inc., Defendants.

No. 88 Civ. 8815(RJW).

United States District Court,
S.D. New York.

Aug. 7, 1989.

O'Donnell, Fox & Gartner, P.C. (William
G. O'Donnell, of counsel), New York City,
for plaintiffs.

Manning, Raab, Dealy & Sturm (John J.
Leo, of counsel), New York City, for defen-
dants.

## OPINION

ROBERT J. WARD, District Judge.

Fidelity Service Corporation ("Fidelity")
and Property Advisory Group ("PAG")
have brought this action seeking a declara-
tory judgment under Rule 57, Fed.R.Civ.P.,
stating that their real estate management
agent, Cooper Hill, Inc. ("Cooper Hill")
lacked authority to execute an agreement
binding plaintiffs to collective bargaining
agreements negotiated between defendants
Realty Advisory Board ("RAB") and Local
32B–32J ("the Union"). The Union has
filed before the designated arbitrator a for-
mal demand for arbitration alleging a viola-
tion of the collective bargaining agreement
between RAB and the Union and plaintiffs
seek a permanent injunction of the arbitra-
tion proceedings. For the reasons that fol-
low, the Court has determined that plain-
tiffs are bound to the collective bargaining
agreement, and denies plaintiffs' motion
for a permanent injunction.

## BACKGROUND

Fidelity, a California corporation which owns real estate throughout the United States, is a subsidiary of a London based company, Heron International. On April 6, 1986, Fidelity entered into a contract with Cooper Hill, a real estate management firm in New York City, to manage property owned by Fidelity. The property, known as Heron Tower, is a high-rise office tower located at 70 East 55th Street in Manhattan. The contract between Fidelity and Cooper Hill provided that Cooper Hill was not to enter into any union contracts or collective bargaining agreements on behalf of Fidelity. In June of 1986, Jerome Lowell, the agent from Cooper Hill, signed an application for Commercial Building Membership from RAB on behalf of Fidelity, pursuant to which Fidelity would join RAB.[1] Fidelity did not sign the agreement. The line on the application designated for the owner's signature was crossed out and signed by Lowell. The agreement stated that the member would be bound to collective bargaining agreements RAB negotiates with the Union[2] unless the member withdraws from the bargaining group prior to commencement of bargaining. Neither Fidelity, Cooper Hill nor PAG withdrew from RAB in 1986 or 1987.

On June 26, 1986, Cooper Hill contracted with International Service Systems, Inc. ("ISS") to provide guards and cleaning services for Heron Tower. In November 1986, Fidelity terminated its relationship with Cooper Hill and hired another real estate management firm, PAG. About the same time, RAB sent to the Union a list of buildings that had agreed to participate in multi-employer bargaining. Heron Tower was included on the list, which at first listed Cooper Hill as managing agent and was later updated to reflect the change in management to PAG. The guards from ISS were released in June 1987 and replaced with employees from another agency, Elite Investigations, Ltd. On July 1, 1987, plaintiffs received from the Union a formal demand for arbitration alleging a violation of the collective bargaining agreement between the Union and RAB. Fidelity claims it was not advised of its participation in the agreement until served by defendants with Notice of Intent to Arbitrate.

Plaintiffs commenced this action by order to show cause filed December 15, 1988. Arbitration was adjourned by consent of the parties pending a hearing on the order to show cause. On December 21, 1988, the hearing was held, and the motion was adjourned sine die. Thereafter, the hearing on the motion for a preliminary injunction was consolidated with a trial on the merits, pursuant to Rule 65(a)(2), Fed.R.Civ.P. An evidentiary hearing was held on June 19 and 20, 1989. Fidelity and PAG seek a declaratory judgment stating that Cooper Hill did not have the authority to execute the contract and therefore did not bind Fidelity or PAG to any contract negotiated by RAB and the Union.[3] Fidelity further seeks a permanent injunction to prevent arbitration of the matter. The Union seeks back pay, pension and welfare benefits for the terminated ISS employees and seeks to arbitrate the purported violations as provided in the Union contract.

---

1. RAB is a multi-employer bargaining group consisting of employers in the real estate industry in New York City and vicinity.

2. The Union, Local 32B–32J—Service Employees International Union, is a duly organized labor organization consisting of over 67,000 members engaged in the building service industry in New York City and vicinity.

3. During the second day of the hearing, plaintiffs withdrew their second cause of action challenging the appropriateness of a mixed guard unit as bargaining agent. Under 29 U.S.C. § 159(b)(3), the N.L.R.B. shall decide the unit appropriate for the purposes of collective bargaining, but shall not decide that any unit is appropriate for such purposes if it includes, together with other employees, any individual employed as a guard. Although an employer may not be compelled to recognize a mixed guard unit, it can do so voluntarily. *Truck Drivers Local Union No. 807 v. N.L.R.B.,* 755 F.2d 5, 8 (2d Cir.) *cert. denied,* 474 U.S. 901, 106 S.Ct. 225, 88 L.Ed.2d 225 (1985). Plaintiffs conceded that their actions which included appearing at hearings, adjourning hearings and suggesting settlement of the arbitration, constituted recognition of the Union.

## DISCUSSION

Before ordering parties to arbitrate, the Court must satisfy itself that the parties' agreement to arbitrate is not in issue. The Court may not order arbitration unless and until it is satisfied that a valid arbitration agreement exists. *Transit Casualty Co. v. Trenwick Reinsurance Co., Ltd.*, 659 F.Supp. 1346, 1350 (S.D.N.Y.1987), *aff'd without opinion*, 841 F.2d 1117 (2d Cir. 1988).

In order for the Court to find a valid agreement, an agency relationship must be established between Cooper Hill and Fidelity whereby Lowell had authority to bind Fidelity to the contract with RAB. Actual agency relationships include both express and implied agencies. An express agency relationship did not exist between Cooper Hill and Fidelity because their contract specifically limited the power of the manager to bind the owner to any type of union contract or collective bargaining agreement. An implied agency is inferred from the facts and circumstances of the particular case, including the words and conduct of the parties. Since Cooper Hill and Fidelity had no prior dealings, an implied agency may not be inferred on this basis. However, if defendants reasonably relied on Lowell's apparent authority to enter into the transaction and changed their position in reliance on this authority, then plaintiffs are estopped from denying liability for Lowell's actions.[4]

*Apparent Authority*

■ "The mere creation of an agency for some purpose, does not automatically invest the agent with 'apparent authority' to bind the principal without limitation." *Ford v. Unity Hospital*, 32 N.Y.2d 464, 469, 299 N.E.2d 659, 664, 346 N.Y.S.2d 238, 244 (1973). It is essential to the creation of apparent authority that words or conduct of the principal are communicated to a third party and these words or conduct give rise to the reasonable belief that the agent possesses authority to enter into a transaction. An agent himself cannot create apparent authority. *Consumers Subscription Center, Inc. v. Web Letter Co.*, 609 F.Supp. 1134, 1139 (E.D.N.Y.1985) (quoting *Hallock v. State*, 64 N.Y.2d 224, 231, 474 N.E.2d 1178, 1181, 485 N.Y.S.2d 510, 513 (1984)). In this case, Fidelity had no direct contact with the Union and could not in that way have given Lowell apparent authority to sign the agreement.

However, apparent authority may arise absent any direct contact between the principal and the third party. "Apparent authority is conferred by the conduct of a principal which justifies a third party's belief that an agency relationship exists." *E.F. Hutton & Co. v. First Florida Securities, Inc.*, 654 F.Supp. 1132, 1142 (S.D.N.Y.1987).

> Where a principal by his voluntary act placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular businesses is justified in assuming that such agent has authority to perform a particular act and deals with the agent upon that assumption, the principal is estopped as against such third person from denying the agent's authority.

2 N.Y.Jur.2d *Agency* § 89. The appointment of a person to a position with generally recognized duties may create apparent authority. *First Fidelity Bank, N.A. v. Government of Antigua & Barbuda*, 877 F.2d 189, 193 (2d Cir.1989) (citing Restatement (Second) of Agency § 27 (1958)).

### 1. Custom in the Industry

■ Lowell's appointment as managing agent for Heron Tower was sufficient to support RAB's belief that Lowell had the authority to enter into the agreement. It was revealed at the hearing through the testimony of James Berg, Executive Director of RAB, that it was common practice and custom throughout the commercial

---

**4.** Recently, the Court of Appeals for the Second Circuit expressed the view that in determining questions of actual and apparent agency relationships, federal common law and New York law lead to the same result. *First Fidelity Bank,*

*N.A. v. Government of Antigua & Barbuda*, 877 F.2d 189, 194 n. 3 (2d Cir.1989). The Court will rely on both federal and state cases in its analysis.

building industry in New York City for managing agents to bind owners of buildings to collective bargaining agreements with the Union, and it was normal that a management agent such as Cooper Hill would do so. Furthermore, neither Fidelity nor PAG withdrew from the agreement. Failure to withdraw from the 1986 agreement meant plaintiffs were automatically bound to the 1987 agreement as well, inasmuch as they did not withdraw before commencement of bargaining. Testimony was also presented that first Cooper Hill and then PAG paid Heron Tower's membership dues to RAB. The name of the building as well as the names of the managing agents appeared on a list of buildings that had agreed to be bound to the multi-employer bargaining agreement sent to the Union. It is customary for the Union to rely on this list and set up files and activities accordingly. When Cooper Hill was replaced by PAG, the names were changed on the list. This is a further indication that some continuing communication was occurring between RAB and the managing agents.

To determine the extent of an authorization, a court must look to the accompanying circumstances, including the situation of the parties, their relationship to each other and the business in which they are engaged, the general usages of the business in question and the purported principal's business methods. *Columbia Broadcast Systems Inc. v. Stokely–Van Camp Inc.*, 522 F.2d 369, 375–76 (2d Cir.1975). Berg testified that managing agents routinely execute applications such as the application in this case. According to Berg's testimony, RAB routinely deals with managing agents in part because the entities that own a building are often amorphous, and frequently change over time. It was usual to have a management agent such as Cooper Hill execute the document. Berg went on to state that it is normal and customary for agents in New York City to enter a labor agreement on behalf of the owner. He further stated that it was normal that large commercial buildings in New York City have employees covered by a collective bargaining agreement. Berg knew of only one large building in New

York City which did not have a unionized work force.

Plaintiffs argue that Fidelity, a California corporation, was unaware of and therefore cannot be held to the standards and customs of business in New York City. Plaintiffs claim that trade custom must be so universal as to create a presumption that each party is aware of the custom and contracts with reference to it. To support this proposition, plaintiffs cite *Doyle Dane Bernbach, Inc. v. Avis*, 526 F.Supp. 117 (S.D.N.Y.1981) and *Flower City Painting Contractors, Inc. v. Gumina Construction Co.*, 591 F.2d 162 (2d Cir.1979). In both of these cases the plaintiff and defendant were parties to a contract and a dispute existed over the terms of the contract. In *Doyle Dane Bernbach, Inc.*, the duration of the contract and terms for termination were not included in the contract. Therefore, when plaintiff attempted to terminate the contract on 90 days notice, a customary procedure in New York City, a dispute arose between the parties. The court held that the defendant should not be bound by a custom of which he was unaware. In *Flower City Painting Contractors, Inc.*, the plaintiff, a Rochester corporation, was not aware that the paint job it contracted to perform for defendant, an Ohio corporation, included both interior and exterior walls. The plaintiff had quoted the price for the job to include only the interior walls. The court held that there was no meeting of the minds and therefore no contract had been formed. "The plaintiff was a neophyte minority painting contractor and this was their first substantial contract on a construction job. It would be unrealistic to hold it strictly to a 'reason to know' standard of trade usage." *Flower City Painting Contractors, Inc. v. Gumina Construction Co., supra*, 591 F.2d at 165 (2d Cir.1979).

Neither of these cases reflects the situation at hand. The terms of the contract between Fidelity and Cooper Hill are not in dispute. The dispute deals with the extent of the agency relationship between the parties and the reliance of the third party Union on the representations of the manag-

ing agent. In the context of the instant case, where the Court must determine the extent of Cooper Hill's apparent authority, Fidelity cannot claim ignorance of the usual course of business in New York City. *See Columbia Broadcast Systems Inc. v. Stokely–Van Camp, Inc., supra,* 522 F.2d at 376. ("a principal say in Indiana, who does business through an advertising agency on Madison Avenue, can ordinarily expect his agency to do business in accordance with the usages in New York").

### 2. *Duty of Inquiry*

█ Plaintiffs further assert that defendants failed in their duty of reasonable inquiry. One who deals with an agent does so at his peril, and must make necessary effort to discover the actual scope of the agent's authority. *Consumers Subscription Center, Inc. v. Web Letter Co., supra,* 609 F.Supp. at 1139. A party claiming reliance on an agent's apparent authority must not fail to heed warnings or inconsistent circumstances. *General Overseas Films, Ltd. v. Robin Int'l Inc.,* 542 F.Supp. 684, 695 (S.D.N.Y.1982), *aff'd without opinion,* 718 F.2d 1085 (2d Cir.1983).

In the instant case, there were no warnings or inconsistent circumstances which would have alerted RAB to the fact that Lowell lacked authority to execute the agreement on Fidelity's behalf. Fidelity cites as evidence of an "extraordinary transaction" the fact that Lowell crossed out the line provided on the application form for the owner's signature and signed his own name. However, it was established at the hearing that the alterations to the form were made by an employee of RAB after the form had been submitted, and not by Lowell. Therefore, the appearance of the application form was not extraordinary, and it was reasonable for RAB to believe that Lowell had authority to enter into the agreement.

Plaintiffs assert that a duty of reasonable inquiry would have lead RAB and the Union to discover the contractual clause in the management agreement that specifically restricted the authority of the agent. A party invoking the doctrine of apparent authority assumes a duty of reasonable inquiry as to the parameters of the agent's actual authority. *Collision Plan Unlimited, Inc. v. Bankers Trust Co.,* 63 N.Y.2d 827, 830, 472 N.E.2d 28, 29, 482 N.Y.S.2d 252, 253 (1984). However, the authority of an agent cannot be secretly limited by his principal so as to affect a third party dealing with such agent in ignorance of the limitation. *Strip Clean Floor Refinishing v. N.Y. Dist. Council No 9 Brotherhood of Painters,* 333 F.Supp. 385, 396 (E.D.N.Y. 1971). In order for a limitation that is not a standard in the industry to be effective, it must be communicated to third parties with whom the agent deals. *Id.* at 386.

> Special or secret instructions or limitations upon the authority of an agent, whose powers would otherwise be coextensive with the business entrusted to him must be communicated to the party with whom he deals, or the principal will be bound to the same extent as if they were not given. Such instructions or limitations are not binding on a third party who deals with the agent in good faith without knowledge of the instructions and in reliance upon the apparent authority with which the principal has clothed him.

N.Y.Jur.2d. *Agency* § 88. *Accord Columbia Broadcast Systems Inc. v. Stokely–Van Camp, Inc., supra,* 522 F.2d at 276 n. 16 ("Even if Stokely had expressly told Lennen not to bind it, if advertising agencies generally executed contracts binding their clients and CBS reasonably believed that Lennen was so authorized, Stokely would be bound."). At the hearing, both James Berg and Kevin McCulloch, Assistant to the President of the Union, testified that they never saw the management agreement nor were they put on notice that the agreement contained an extraordinary limitation. It is not customary for either RAB or the Union to receive and review management agreements.

Cases where courts have found a duty of reasonable inquiry involve situations where the authority asserted by the agent so departed from propriety that it was patently of an unusual nature. *E.g., National Union Fire Insurance Co. v. C.P.P. Insur-*

*ance Agency, Ltd.*, 563 F.Supp. 1216, 1222 (S.D.N.Y.1983). *Accord, UA–Columbia Cablevision of Westchester, Inc. v. Fraken Builders, Inc.*, 96 A.D.2d 509, 510, 464 N.Y.S.2d 814, 815 (2d Dep't 1983). For example, the mortgage arrangement in *Collision Plan Unlimited, Inc. v. Bankers Trust Company*, triggered the duty of reasonable inquiry since a gratuitous guarantee by a corporation of a debt of an unrelated corporation is extraordinary. Contracts of guarantee or suretyship, not in accord with the regular line of corporate business, cannot be made without express shareholder authority. *Collision Plan Unlimited, Inc. v. Bankers Trust Company, supra*, 63 N.Y.2d at 831, 472 N.E.2d at 29, 482 N.Y.S.2d at 253 (citing N.Y. Bus. Corp. Law § 908 (McKinney 1986) and Restatement (Second) of Agency § 165 comment c (1958)).

### 3. *Reliance*

In order to bind a principal on the theory of apparent authority, the third party must not only hold a reasonable belief that the agent was acting within the scope of his or her authority, but must also change its position in reliance on the agent's act. *Songbird Jet Ltd. v. Amax Inc.*, 581 F.Supp. 912, 919 (S.D.N.Y.1984). The Restatement defines changes of position as payment of money, expenditure of labor, suffering a loss or subjection to legal liability. Restatement (Second) of Agency § 8B(3) (1958).

ISS, the cleaning contractor for Heron Tower is bound to a collective bargaining agreement with the Union through a multiemployer bargaining group entitled the Service Employees Association. By virtue of Heron Tower being covered by the Commercial Building Agreement, ISS is entitled to take advantage of certain provisions of the agreement which are superior to those in the Union's agreement with the Service Employees Association. These advantages include certain provisions covering hours, flexibility, work of absentees and reduction in force. In a situation where a cleaning contractor is in a building that is not covered by the Commercial Building Agreement and an individual is absent from work, the work of the absentee must be covered hour for hour by an additional employee, or the work must be done on an overtime basis by other employees after their shift ends. Under the Commercial Building Agreement, the work of an absentee can be covered by employees working during that regular shift at straight time pay. Fewer employees need to be hired, thus saving the building owner a great sum of money. The savings are realized by the cleaning contractor who can pass them on to the owner of the building. Plaintiffs' expert witness, John Godwin testified that labor equals 35% to 45% of the operating expenses in a commercial office building. Therefore, a savings in labor costs could provide the owner with a large benefit. Both McCulloch and Berg testified that because of this benefit, many buildings choose to be bound by the Commercial Building Agreement even though the building has no direct employees covered by such agreement. Berg further testified that buildings belonging to RAB enjoy a further benefit of receiving bulletins and advice from the organization. John Godwin agreed that there would be a benefit to a building owner joining RAB even where there are no direct employees; the benefit being labor harmony.

Defendants claim monetary damage to the Union because the plaintiffs owe unpaid contributions to benefit and welfare plans. Furthermore, the terms and conditions negotiated by the Union directly benefit the individual employees. The failure of the plaintiffs to apply terms and conditions of the Commercial Agreement to these individuals, such as payment of wages, vacation and holiday benefits and sick days results in damage to the Union because its members are damaged by such acts.

## CONCLUSION

Jerome Lowell, as managing agent for Heron Tower, had apparent authority to enter into the agreement with RAB on behalf of Fidelity. The custom of the real estate industry in New York City is such that managing agents are ordinarily endowed with this authority. The Union and RAB changed their positions in reliance on

this authority and have thereby suffered a cognizable loss. Fidelity is therefore bound by the agreement with RAB, and plaintiffs' motion for summary judgment and permanent injunction of the arbitration proceedings are denied. The parties will proceed to arbitration in accordance with the terms of the agreement. The instant action is hereby dismissed, subject to being reopened by either party for review of the arbitration proceedings.

It is so ordered.