Eric L. **BERLINER**, Plaintiff,

v.

**CROSSLAND FEDERAL SAVINGS BANK**, Defendant.

No. 93. Civ. 3844 (SS).

United States District Court,
S.D. New York.

Dec. 2, 1994.

Berliner & Pilson, New York City (Richard J. Pilson, of counsel), for plaintiff.

Jacobs Persinger & Parker, New York City (Jay A. Katz, of counsel), for defendant.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

In this action for breach of contract and fraud in the inducement, defendant Cross-Land Federal Savings Bank ("CrossLand") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). For the reasons discussed below, the motion to dismiss is granted in part and denied in part.

### Background

CrossLand held a mortgage and mortgage note (hereinafter the "Mortgage") on property located at 25 Melville Park Road, Melville, New York. On February 1, 1993, the Mortgage became due in the principle amount of $13,200,000, which went unpaid. Mark Cotton ("Cotton"), a Vice President in Cross-Land's Special Assets Department, was responsible for managing the Mortgage.

In April 1993, Cotton took steps to renegotiate the loan with the original borrower, as well as to arrange an auction for the Mortgage. To effectuate the latter goal, Cotton contacted Edward Brailey ("Brailey"), a mortgage broker. Brailey called his brother, who in turn told plaintiff Eric L. Berliner ("Berliner") about the Mortgage. Berliner is an attorney and businessman, with "extensive experience" in the real estate field. Plaintiff's Memorandum of Law in Opposition to CrossLand Federal Savings Bank's Motion for Summary Judgment ("Pl.'s Memorandum") at 2. Berliner was interested in the Mortgage, and sought access to Cross-Land's confidential file on the Mortgage.

On April 1, 1993, Berliner signed a confidentiality agreement (the "Confidentiality Agreement"). The Confidentiality Agreement allowed Berliner to review CrossLand's file, and provided in part:

> CrossLand believes that the Information ... provide[d] under this Agreement will be material and accurate for purposes of your making an evaluation of the loan. CrossLand does not make any representations to you with respect to the accuracy of the Information; and only representations and warranties which are set forth in a definitive legal agreement for the possible transaction between you and CrossLand for the sale of the loan ... shall have any legal effect.

Affidavit of Eric Berliner ("Berliner Aff."), sworn to October 14, 1993, at Ex. C, ¶ 5. On April 9, 1993, Berliner went to CrossLand and reviewed the confidential file. While at CrossLand, Berliner and Cotton discussed the mechanics of the bidding process. *Id.*

Cotton told Berliner that if his bid was accepted, he would have to act fast. *Id.*

On April 12, 1993, Berliner submitted a bid for the Mortgage in the amount of $5,025,000. In an accompanying cover letter, Berliner requested a two week due diligence period if his bid was accepted. Affidavit of Mark Cotton ("Cotton Aff."), sworn to September 21, 1994, at Ex. A. On April 15 and 16, Berliner telephoned Cotton to ask about the status of the bidding process. In the course of these conversations, Berliner admits that Cotton said that there would be a delay in the bidding process because CrossLand's Executive Committee had to approve each bid before it selected a winner. Berliner Aff. at ¶ 7. Nevertheless, Berliner claims that Cotton led him to believe that this approval was a mere formality because as the bank officer in charge of the Mortgage, Cotton had "full authority." *Id.*

On April 19, 1993, Cotton telefaxed a letter to Berliner. The letter, which is addressed to Brailey, stated in relevant part:

> It is my pleasure to inform you that your client, Mr. Eric L. Berliner, has **won the bidding process** [for the Mortgage] ...
> I respectfully request that you and your client make arrangements to sign the Letter of Agreement and present a 10% deposit, certified funds, within **24 hours** of your receipt of this letter.

Cotton Aff. at Ex. B (emphasis in original). The letter also provided:

> **The transaction taking place is contingent upon CrossLand's Executive Committee's approval.** Furthermore, this letter is for notification and instructional purposes only and should not be implied as an agreement, contract or any type of binding contingency between CrossLand, its officers and/or representatives and Berliner & Pilson [Berliner's law firm], its officers, directors, agents, representatives and employees.

*Id.* (emphasis added).

On April 20, 1993, Berliner and Brailey had a conference call with Cotton. Berliner expressed concern about the letter's reference to further Executive Committee approval because he thought that the Executive Committee's review occurred before a winner was announced. Cotton assured Berliner that the deal was complete, and that Executive Committee approval was nothing more than a "rubber stamp." Berliner Aff. at ¶ 10. Immediately after this conversation, Berliner contacted his investor and arranged the funds necessary for the $502,500 deposit. *Id.* at 11. Later that day, Berliner presented CrossLand with the deposit. Berliner spoke with a number of CrossLand officials, including Cotton, Pat Jennings, Raymond Schoettelkotte, and a Mr. Perrin, CrossLand's General Counsel. Berliner was informed that the Executive Committee had not approved his bid, and consequently his check would not be accepted. *Id.* at ¶ 12. Jennings allegedly told Berliner that CrossLand was seeking better offers, or in the alternative to renegotiate with the original borrower. *Id.* One of these CrossLand employees also made a photocopy of Berliner's certified check. *Id.*

Berliner subsequently initiated this action in the Supreme Court of the State of New York, County of New York. The case was removed to this Court on June 8, 1993. In his Amended Complaint, Berliner asserts claims of breach of contract and fraud in the inducement. Berliner seeks $8,375,000 in compensatory damages, which represents the difference between the principle of the Mortgage and his bid. Berliner also seeks $20,000,000 in punitive damages and attorneys' fees.

### Discussion

### I. *Rule 56: Summary Judgment*

Rule 56(c) provides that summary judgment is appropriate if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The burden is on the moving party to show that no genuine issue of material fact exists. *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994) (citation omitted). In determining whether a genuine issue of material facts exists, all ambiguities must be resolved and all infer-

ences drawn in favor of the non-moving party. *McNeil v. Aguilos,* 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (other citations omitted)).

The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. *Gallo* at 1223–24 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *DiCola v. SwissRe Holding (N.A.), Inc.,* 996 F.2d 30, 32 (2d Cir.1993)). Establishing the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525 (2d Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original)). Rather, to defeat a summary judgment motion, the responding party must show the existence of a disputed material fact in light of the substantive law. *Anderson* at 248, 106 S.Ct. at 2510.

## II. *Breach of Contract*

Berliner claims that the writings and conversations he had with Cotton constitute an acceptance of a firm offer to which Cross-Land bound itself. To support this contention, Berliner relies upon (1) the April 19 letter stating that he "won the bidding process," (2) his partial performance as evidenced by the delivery of the deposit to CrossLand on April 20, and (3) Cotton's apparent authority as a Vice President of CrossLand to bind the bank to the transaction.

I start by noting that under New York law:

if parties do not intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs. This rule holds true even if the parties have orally agreed upon all the terms of the proposed contract.

*R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 74 (2d Cir.1984). The Confidentiality Agreement provided:

CrossLand does not make any representations to you with respect to the accuracy of the Information [contained in this file]; and only representations and warranties which are set forth in a definitive legal agreement for the possible transaction between you and CrossLand for the sale of the loan, when, as and if executed by Crossland and you, and subject to such limitations and restrictions as may be set forth in such *definitive* agreement, shall have any legal effect.

Berliner Aff. at Ex. C, ¶ 5 (emphasis added). The April 19 letter advised Berliner that he should make arrangements to sign a "Letter of Agreement" on April 20, that Executive Committee approval was necessary before the transaction would take place, and that the letter did not constitute a binding agreement. Cotton Aff. at Ex. B. These clauses unambiguously placed Berliner on notice that the parties would close the deal only upon the execution of a written contract approved by the Executive Committee. Nonetheless, I consider each of Berliner's evidentiary arguments on the breach of contract issue in turn.

While the April 19 letter stated that Mr. Berliner "won" the bidding process, it also provided that:

[t]he transaction taking place is contingent upon CrossLand's Executive Committee's approval ... this letter is for notification and instructional purposes only and should not be implied as an agreement, contract or any type of binding contingency between CrossLand, its officers and/or representatives and Berliner & Pilson....

Cotton Aff. at Ex. B. I find this letter, as a matter of law, unambiguous. Even in the light most favorable to Berliner, the April 19 letter cannot be reasonably interpreted to constitute a binding agreement. The letter unambiguously states that a deal would be consummated only upon the approval of the Executive Committee and the execution of a Letter of Agreement.

Berliner's partial performance argument also rings hollow. A contract may be formed when "one party has partially performed, and that performance has been accepted by the party disclaiming the con-

tract ... partial performance is an unmistakable signal that one party believes that there is a contract; and the party who accepts the performance signals, by that act, that it also understands a contract to be in effect." *R.G. Group* at 75. Mere preparatory acts do not constitute partial performance. *Litton Indus. v. Lehman Bros. Kuhn Loeb, Inc.,* 767 F.Supp. 1220, 1229 (S.D.N.Y.1991), *rev'd on other grounds,* 967 F.2d 742 (2d Cir.1992) (citing *R.G. Group* at 75–76; *Shearson Lehman CMO, Inc. v. TCF Banking & Sav.,* 710 F.Supp. 67, 71 (S.D.N.Y.1989)). Putting aside the previous discussion regarding the need for a written agreement, Berliner concedes that when he went to CrossLand on April 20, he was informed that there was no deal. Berliner's contention that CrossLand's photocopying of the certified check, which occurred immediately after he was told that there would be no deal, cannot be reasonably construed as an "unmistakable" signal of performance or of acceptance of partial performance.

▮ Berliner's apparent authority argument also fails. The creation of an agency does not automatically invest the agent with apparent authority. *Property Advisory Group, Inc. v. Gus Bevona,* 718 F.Supp. 209, 211 (S.D.N.Y.1989) (Ward, J.) (quotation omitted). A claim of apparent authority requires "that words or conduct of the principal are communicated to a third party and these words or conduct give rise to the reasonable belief that the agent possesses authority to enter into a transaction. An agent himself cannot create apparent authority." *Id.* (citation omitted). Apparent authority may arise absent any contact between the principal and the third party:

> [w]here a principal by his [or her] voluntary act placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has authority to perform a particular act and deals with the agent upon that assumption....

*Id.* Berliner never alleges that he had any substantive contact with any principals of CrossLand other than Cotton. Nor does Berliner, who admits that he is experienced in the real estate field, sufficiently allege that he had any justifiable reason outside of Cotton's own statements for believing that Cotton had been placed in a position that empowered him to unilaterally bind CrossLand. Indeed, as early as April 15 or 16, Berliner was aware that Cotton could not singlehandedly enter into a transaction because Cotton himself informed Berliner of the Executive Committee's existence, and the need for its approval. Further, the April 19 letter made it clear that Executive Committee approval was required before the transaction would take place. Even taking Berliner's allegation that Cotton led him to believe that the Executive Committee would rubber stamp Cotton's recommendation on its face, no reasonable person, let alone an experienced real estate investor and attorney, could conclude that Cotton could bind CrossLand to the bid without Executive Committee approval. In short, Berliner proffers "little or no evidence" in support of his breach of contract claim or to create the existence of a genuine issue of disputed fact. Accordingly, his breach of contract claim must be dismissed.

### III. *Fraud in the Inducement*

▮ A party that misrepresents its intent to enter into a contract may be liable under a tort theory of fraud in the inducement, even if no contract was actually formed. *Channel Master Corporation v. Aluminium Ltd. Sales, Inc.,* 4 N.Y.2d 403, 408, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958). This cause of action is entirely independent of the formation of a contractual relation between the parties because it is based upon the reliance created by the false utterance that a party intends to enter into a contract. *Id.* See also *Landgarten v. Noise Cancellation Technologies,* 1993 WL 312999 at *3 (S.D.N.Y. August 11, 1993) (Freeh, J.) (deliberate misrepresentation of intent to perform contractual obligation supports independent action for fraud). A claim of fraud in the inducement requires a showing that the defendant (1) knowingly uttered a falsehood; (2) intending to deprive the plaintiff of a benefit; and (3) that the plaintiff relied upon the falsehood and was consequently deceived and damaged. *Id.* at 406–08. Courts interpreting *Channel Master* have cautioned that

it should be interpreted narrowly, especially where a plaintiff has a potentially viable breach of contract claim. *See Best Western Int'l, Inc. v. CSI Int'l Corp.,* 1994 WL 465905 at *4 (S.D.N.Y. August 23, 1994) (McKenna, J.) (citing cases); *Bower v. Weisman,* 650 F.Supp. 1415, 1422–23 (S.D.N.Y.1986) (Sweet, J.) (arguing that approach of New York Court of Appeals suggests that broad interpretation of *Channel Master* is inappropriate).

 The only ground upon which Cross-Land seeks to dismiss Berliner's fraud claim is that "it is directly referrable [sic] to an alleged breach of contract claim...." CrossLand Federal Savings Bank's Reply Memorandum of Law in Support of Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure at 7. Construing the facts in the light most favorable to plaintiff, I find that Berliner's fraud in the inducement allegation is viable because it "depicts a deliberate misrepresentation of intention to perform a contractual obligation." *Landgarten v. Noise Cancellation Technologies,* 1993 WL 312999 at *3 (S.D.N.Y. August 11, 1993) (Freeh, J.). Such allegations are independent of the breach of contract claims. *Id.*

Cotton concedes that initially he was "simultaneously" negotiating for an extension of the Mortgage with the original borrower and soliciting bids from outside investors such as Berliner. Cotton Aff. at ¶ 4. On April 20, Pat Jennings allegedly told Berliner that CrossLand's only interest in his bid was to utilize it to seek higher bids and to further negotiations with the original borrower. To the extent that Berliner alleges that Cross-Land invited him to bid and induced him to arrange a deposit without ever intending to enter into a contract, Berliner has sufficiently set forth a claim for fraud in the inducement that survives summary judgment[1].

### Conclusion

For the reasons discussed above, defendant CrossLand's motion for summary judg-ment is granted with respect to plaintiff Berliner's breach of contract claims as set forth in Counts One and Two in the Amended Complaint. CrossLand's motion is denied with respect to Berliner's fraud in the inducement claim, as set forth in Count Three of the Amended Complaint. The Clerk of the Court is directed to enter judgment accordingly.

**SO ORDERED.**

---

1. In its motion, CrossLand urges me to dismiss Berliner's fraud claims, contained in Counts Three and Four of the Amended Complaint, because they are not independent of his contract claims. I reject that argument. Whether the damages claims contained in Counts Three and Four are legally sufficient is a question that needs to be briefed in the appropriate procedural context.