**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 32BJ, AFL–CIO, Plaintiff,**

v.

**STONE PARK ASSOCIATES, LLC and A.M. PROPERTY HOLDING CORP. Defendants.**

No. 03 CIV. 6598(JGK).

United States District Court, S.D. New York.

July 22, 2004.

The defendants argue that they are not bound by the award because they were not a party to the collective bargaining agreement and its arbitration clause.[1] In addition to moving for summary judgment to confirm the award, including interest at a rate of 9% per annum from the date of the arbitration decision, the plaintiff seeks attorneys' fees and costs for enforcing the award, as provided in the collective bargaining agreement.

Judith I. Padow, Office of the General Counsel, New York City, for Plaintiff.

Allen B. Breslow, Law Office of Allen B. Breslow, Commack, NY, for Defendants.

## OPINION AND ORDER

KOELTL, District Judge.

The plaintiff, Service Employees International Union, Local 32BJ, AFL–CIO ("SEIU" or "the Union"), brings this motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure to confirm and enforce a labor arbitration award pursuant to § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a). The underlying arbitration arose out of a contractual dispute between the plaintiff and defendants Stone Park Associates, LLC ("Stone Park") and A.M. Property Holding Corp. ("A.M.Property") over a pre-existing collective bargaining agreement covering SEIU employees of a building purchased by Stone Park.

I

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323, 106 S.Ct. 2548. The substantive law governing the case

1. Only Stone Park was a purchaser of the building and a signatory to the Contract of Sale, while A.M. Property was retained by Stone Park to manage the building. Both defendants, however, were respondents in the underlying arbitration and have never objected to bringing this action against both parties.

At argument of the current motion, counsel for the defendants stated that, because of the interrelationship of the two entities, the Court should not draw a distinction between the defendants. Therefore, any reference to Stone Park includes both defendants.

will identify those facts that are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Gallo*, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir.1993); *see also Scotto v. Almenas*, 143 F.3d 105, 114–15 (2d Cir. 1998) (collecting cases).

## II

Unless otherwise noted, the following facts are not in dispute. On February 25, 2003 the defendant Stone Park purchased a commercial office building at 63 West 38 St. in New York City from Max Four N.Y. Holdings, LLC ("Max Four"). (Pl.'s Rule 56.1 St. ¶¶ 2, 10; Def.'s Rule 56.1 St. ¶¶ 2, 10.) The seller had retained four building employees who were members of SEIU Local 32BJ, a Union representing approximately 70,000 building-service workers in New York, New Jersey, and Connecticut. (Pl.'s Rule 56.1 St. ¶¶ 1, 3; Def.'s Rule 56.1 St. ¶¶ 1, 3.) The terms and conditions of their employment were established under a collective bargaining agreement, the 2002 Commercial Building Agreement ("CBA"), between the Union and the Realty Advisory Board on Labor Relations, Inc. ("RAB"), an association of building owners and managers that included Max Four. (Pl.'s Rule 56.1 St. ¶ 4; Def.'s Rule 56.1 St. ¶ 4; 2002 Commercial Building Agreement ("CBA") attached as Ex. A to Decl. of Judith I. Padow dated Jan. 27, 2004 ("Padow Decl.").) The defendants are not members of the RAB and did not sign the CBA. (Def.'s Rule 56.1 St. ¶ 4.)

Relevant portions of the CBA provide that covered employees could be terminated only for just cause or by acceptable reductions-in-force, and that employers must maintain employees' existing wages and benefits and provide the Union with three weeks notice prior to subcontracting any "bargaining unit work." (Pl.'s Rule 56.1 St. ¶¶ 8–9; Def.'s Rule 56.1 St. ¶¶ 8–9.) The agreement stipulated that disputes were to be settled by arbitration and allowed for the recovery of counsel fees and court costs incurred in securing an arbitration award. (Pl.'s Rule 56.1 St. ¶ 5; Def.'s Rule 56.1 St. ¶ 5; CBA at Art. VIII(4).) The CBA also included a sale or transfer clause obligating the seller of the building to require the purchaser to hire the Union employees at existing wage and benefit schedules or confront liability for six months of severance payments as determined in the agreement. (Pl.'s Rule 56.1 St. ¶ 6; Def.'s Rule 56.1 St. ¶ 6.) This sale or transfer clause also provided in relevant part:

Nothing herein contained shall be deemed to limit or diminish in any way the Union's right to enforce this agreement against any transferee pursuant to applicable law concerning rules of successorship or otherwise; nor limit or diminish in any way the Union's or any employee's right to institute proceedings pursuant to the provisions of State or Federal labor relations laws, or any statutes, rules or regulations which may be applicable.

(CBA at Art. XV.)

Stone Park retained the defendant A.M. Property to manage the building. (Pl.'s Rule 56.1 St. ¶ 10; Def.'s Rule 56.1 St. ¶ 10.) A.M. Property hired an outside cleaning contractor without requisite notice to the Union, dismissed one of the four workers, and reduced the wages and benefits of two of the three remaining SEIU employees. (Pl.'s Rule 56.1 St. ¶¶ 15–16; Def.'s Rule 56.1 St. ¶¶ 15–16.) On April 24, 2003 the Union demanded arbitration to resolve the defendants' alleged repudiation of the CBA. (Union Letter of Demand for Arbitration dated Apr. 24, 2003 attached as Ex. D to Padow Decl.) The defendants filed suit in the Southern District of New York on May 9, 2003 to enjoin the arbitration proceedings, asserting that they were not bound by the terms of the CBA to which they were not a signatory. *See AM Prop. Holding Corp. v. Local 32B–32J Serv. Employees Int'l,* No. 03 Civ. 3261, 2003 WL 21277111, at *1–2 (S.D.N.Y. June 2, 2003); (Pl.'s Rule 56.1 St. ¶ 18; Def.'s Rule 56.1 St. ¶ 18).

With respect to the building's four Union employees and the CBA, Section 14.4 of the Contract of Sale between Max Four and Stone Park provided:

... Seller shall not terminate (or cause to be terminated) the employment contracts of those employees ("Senior Employees") listed on Exhibit "P–1" annexed hereto and made a part hereof; and Purchaser covenants and agrees that it shall retain all such Senior Employees on the terms and conditions of their current employment for a period of at least twelve (12) full calendar months following the Closing unless such termination is permitted under the Union Agreement (as hereinafter defined), and, upon Closing, any and all liabilities of Seller arising in connection with their employment or termination of their employment by Purchaser under the Commercial Building Agreement between Local 32B–32J Service Employees International Union, AFL–CIO and The Realty Advisory Board on Labor Relations, Inc., effective January 1, 2002, to December 31, 2004 (the "Union Agreement"), are automatically assumed by Purchaser ....

(Contract of Sale between MAX FOUR N.Y. HOLDINGS, L.L.C. and STONE PARK, LLC ("Contract of Sale") dated November 14, 2002 attached as Ex. B to Padow Decl. at § 14.4.)

Stone Park argued that it had not agreed in Section 14.4 to the terms of the CBA but had instead only consented to pay damages resulting from the employment or termination of employment of the Union employees as specified in the CBA. *AM Prop. Holding Corp.,* 2003 WL 21277111, at *2. Judge Batts held that under the terms of the purchase contract, Stone Park had assumed the liability for the CBA, including the arbitration provision, and thus denied the request to stay arbitration in a final order entered on June 10, 2003. *Id.* at *4; (Pl.'s Rule 56.1 St. ¶¶ 19–21; Def.'s Rule 56.1 St. ¶¶ 19–21). The defendants appealed on June 11, 2003, but, after a conference with the Staff Counsel for the Court of Appeals, they withdrew the appeal as moot because the arbitration had already proceeded on June

2 and June 11. (Def.'s Rule 56.1 St. ¶¶ 21, 27; Stipulation of Withdrawal of Appeal ("Withdrawal of Appeal") dated Sept. 10, 2003 attached as Ex. B to Def.'s Rule 56.1 St.) The stipulation of withdrawal stated that "all issues which could be raised on the appeal would be reserved for argument before the Court of Appeals on the confirmation of the award, if the award is confirmed." (Def.'s Rule 56.1 St. ¶ 27; Withdrawal of Appeal.)

Following the district court's rationale that Stone Park had assumed the CBA upon execution of the Contract of Sale, arbitrator Robert Herzog ordered the defendants to cease subcontracting operations and reductions-in-force that were not in compliance with the CBA; to employ all four workers according to the terms of the agreement; and to pay back pay of $15,042.51 and benefit-fund contributions of $11,757.40 on behalf of the four workers. (Pl.'s Rule 56.1 St. ¶¶ 23–24; Def.'s Rule 56.1 St. ¶¶ 23–24; Opinion and Award of Arbitrator Robert Herzog ("Arbitration Award") dated July 21, 2003 attached as Ex. G to Padow Decl.) The defendants have paid $300.73 and have otherwise not complied with the provisions of the award. (Pl.'s Rule 56.1 St. ¶¶ 25–26; Def.'s Rule 56.1 St. ¶¶ 25–26.) The defendants assert that this payment comprised wages for work "actually performed" by two of the workers and did not manifest acceptance of liability under the CBA or the arbitration award. (Def.'s Rule 56.1 St. ¶¶ 25–26.)

### III

The only disputed issue is whether the defendants were contractually bound by the terms of the CBA, particularly the arbitration clause. *Cf. Prop. Advisory Group v. Bevona*, 718 F.Supp. 209, 211 (S.D.N.Y.1989) (the court cannot enforce an arbitration provision unless "the par-

ties' agreement to arbitrate is not in issue" and the court "is satisfied that a valid arbitration agreement exists"). The arbitration award should be confirmed for the same reason that Judge Batts denied the defendants' prior motion to stay arbitration: in Section 14.4 of the Contract of Sale, Stone Park assumed all liabilities relating to the SEIU employees under the CBA, including arbitration. *See AM Prop. Holding Corp.*, 2003 WL 21277111, at *4.

### A

■ "Arbitration is a matter of contract; so a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir.2003) (per curiam) (internal quotation marks omitted). The Court of Appeals for the Second Circuit has, however, held that "nonsignatories may be bound by arbitration agreements entered into by others." *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir.1999). Acknowledging the contractual nature of arbitration, the Court of Appeals recognized under "common law principles of contract and agency law" five theories for binding non-signatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel. *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir.1995); *see also Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir.1999).

■ By the terms of the purchase contract, Stone Park assumed all liabilities relating to Union employment under the CBA, including the duty to arbitrate. Under Section 14.4 of the purchase contract, Stone Park bound itself to the terms of the CBA by assuming "any and all liabilities of Seller arising in connection with [the Un-

ion employees'] employment or termination of their employment . . . under the Commercial Building Agreement. . . ." (Contract of Sale at § 14.4.) Under Article XV of the CBA, in the case of a sale or transfer of a building, the Union retained the "right to enforce [the CBA] against any transferee." (CBA at 47.) This Court agrees with Judge Batts' rejection of the defendants' argument that Section 14.4 only stipulated liability for damages resulting from the employment or termination of the SEIU employees. The plain language of the purchase contract manifested an assumption by Stone Park of all liabilities relating to Union employees under the CBA:

> It is clear to the Court that when [Stone Park] assumed "any and all liabilities" under the Commercial Building Agreement that had been borne by the Building's seller, this expansive collection of liabilities included the obligation to arbitrate any employment disputes that might arise with the Union involving the Commercial Building Agreement.

*AM Prop. Holding Corp.*, 2003 WL 21277111, at *4. Under the contractual principle of assumption, the defendants are bound by the arbitration clause and the resultant award. It is thus unnecessary to reach the plaintiff's alternative argument that the defendants' claim that they are not bound by the CBA arbitration agreement is untimely.

██ The plaintiff also requests prejudgment interest at an annual rate of 9% from the date of the award. (Compl. to Enforce Arbitration Award ("Compl.") at 5.) The decision whether to grant prejudgment interest in arbitration confirmations is left to the discretion of the district court. *The New York City Dist. Council of Carpenters Pension Fund v. E. Millenium Constr.*, No. 03 Civ. 5122, 2003 WL 22773355, at *3 (S.D.N.Y. Nov. 21, 2003). The Court of Appeals has noted in the context of arbitration award confirmations that there is "a presumption in favor of prejudgment interest." *Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 154 (2d Cir.1984). Following this rationale, district courts within the Second Circuit have exercised their discretion to award prejudgment interest when confirming arbitration awards under collective bargaining agreements pursuant to § 301 of the LMRA, when the CBAs indicated that an arbitration award was "final and binding". *E. Millenium Constr.*, 2003 WL 22773355, at *3; *see also Maney v. United Sanitation, Inc.*, No. 99 Civ. 8595, 2000 WL 1191235, at *6 (S.D.N.Y. Aug. 21, 2000); *In Matter of Arbitration between Soft Drink and Brewery Workers Union Local 812, IBT, AFL–CIO and Ali–Dana Beverages, Inc.*, No. 95 Civ. 8081, 1996 WL 420209, at *3 (S.D.N.Y. July 25, 1996).

██ Determining the rate of interest to be applied is also within the discretion of the district court. *Lodges 743 & 1746, Int'l Ass'n of Machinists v. United Aircraft Corp.*, 534 F.2d 422, 446 (2d Cir.1975) (observing that in LMRA § 301 actions, while the district court has discretion whether to grant interest, "it may be proper, as a matter of convenience, to look to state law in order to determine the appropriate rate"). Because the LMRA is silent with respect to a prejudgment interest rate, the "common practice" among courts within the Second Circuit is to grant interest at a rate of 9%, the rate of prejudgment interest under New York State law, N.Y. C.P.L.R. §§ 5001–5004. *E. Millenium Constr.*, 2003 WL 22773355, at *3; *see also Maney*, 2000 WL 1191235, at *6 (applying interest rate of 9% per annum to arbitration award confirmation pursuant to LMRA § 301); *Soft Drink and Brewery Workers Union*, 1996 WL 420209, at *3 (same). The defendants have not objected

to the plaintiff's request for prejudgment interest nor to the proposed rate of 9%, and the CBA in this case did indicate that any arbitration award was "final and binding upon the parties and the employee(s) or Employer(s) involved." (CBA at Art. VIII(3).) Because the defendants are bound by the terms of the CBA, the Court in its discretion grants prejudgment interest at a rate of 9% per annum on the amounts due from the date of the award to the date judgment is entered in this matter.

### B

The Union also contends that the defendants are responsible for the Union's counsel fees and court expenses incurred in enforcing the arbitration award. The CBA provides that, if either party fails to follow the terms of an arbitration award within two weeks after the award is sent, the other party is entitled to sue and, if successful, to receive from the other party "all expenses for counsel fees and court costs." (CBA at Art. VIII(4).) Stone Park assumed responsibility in the Contract of Sale for all liabilities relating to the Union employees under the CBA, and there is no basis to exclude this specific contractual obligation any more than any other provision of the CBA that concerns the employees. The final arbitration decision was issued on July 21, 2003 and this complaint was filed on August 29, 2003. (Arbitration Award at 17; Compl. at 5.) By their own statements, the defendants have not complied with the terms of the award. (Pl.'s Rule 56.1 St. ¶¶ 25–26; Def.'s Rule 56.1 St. ¶¶ 25–26.) The plaintiff is thus entitled to attorneys' fees and costs in securing the award.

### CONCLUSION

For the reasons explained above, the plaintiff's motion for summary judgment is granted, the arbitration award is confirmed, with interest at an annual rate of 9%, and the plaintiff is awarded attorneys' fees and costs for enforcing the award. The plaintiff is directed to submit a proposed Judgment within five days. The defendants may submit any objections two days thereafter. The plaintiff may submit a motion pursuant to Fed.R.Civ.P. 54(d)(2) after Judgment is entered seeking attorneys' fees and supporting the amounts sought.

**SO ORDERED.**