Chief Judge Fuld.
This appeal, here by permission of the Appellate Division on a certified question, calls upon us to determine the validity, under the one-year provision of the Statute of Frauds, of an oral agreement which entitled the defendant to terminate its contractual arrangement with the plaintiff within one year of its making.
In October of 1960, plaintiff bottling company entered into an oral agreement with defendant Schmidt and Sons, a manufacturer of beer in Pennsylvania, “whereby”, the complaint recites, “ plaintiff became the exclusive wholesale distributor in Queens County of Schmidt beer * * * for as long as Schmidt sold beer in the New Yorh metropolitan area in which Queens County is located.” According to the plaintiff, there “ was practically no sale of Schmidt beer ” in Queens County prior to the time the agreement was made. And, in the words of the pleading, at Schmidt’s “ special request ” and “ in reliance on [its] representation and promises ” with respect to its exclusive distributorship, the plaintiff had vigorously exerted itself and ‘ ‘ at large expense * * * developed the sale of Schmidt beer in [Queens] County ” — soliciting customers, distributing advertising and granting price concessions — with the result that, in a year’s time, “ there was approximately a 100% increase in plaintiff’s sale of Schmidt beer ”.
In June, 1962, defendant Schmidt designated defendant Midway Beverage Corporation its distributor in place of the plaintiff. The latter thereupon brought this suit for breach of contract, seeking damages of $200,000 (first cause of action). In another cause of action (the third)—in which damages of $500,000 were sought — the plaintiff alleged that defendant Schmidt and several other defendants entered into a conspiracy pursuant to which Schmidt breached and repudiated its agreement with the plaintiff by making Midway its exclusive agent in Queens and that, in addition, all of the defendants conspired together “ to defraud and cheat plaintiff out of its said business and the just fruits of its labors and expenditures ”.
Defendant Schmidt was successful at Special Term both ttpon its motion for summary judgment—pursuant to CPLR 3212— dismissing the first and third causes of action on the ground that the agreement asserted was void under the Statute of Frauds and upon its further motion to dismiss the third cause of action *175 —pursuant to CPLB 3211 (subd. [a], par. 7)—for failure to state a cause of action. The Appellate Division, however, reaching a different conclusion, modified the order appealed from. It denied the defendant’s motion for summary judgment and, in so doing, observed that “ the contingency, i.e., defendant Schmidt’s discontinuance of its sales in the New York metropolitan area, was expressly stated to terminate the distributorship.” Consequently, continued the court, since “ [i]t was within the control of and dependent upon the will of said defendant and performable within a year of its making ”, the agreement “ is outside the Statute of Frauds.”[1] We agree with this reasoning and conclusion.
The Statute of Frauds requires an agreement to be in writing if “ [b]y its terms [it] is not to be performed within one year from the making thereof ” (General Obligations Law, § 5-701, subd. 1 [formerly Personal Property Law, § 31, subd. 1]). According to the complaint before us, the plaintiff and the defendant Schmidt “ entered into an agreement whereby plaintiff became the exclusive wholesale distributor in Queens County of Schmidt beer * * * for as long as Schmidt sold beer in the New York metropolitan area ”, and the question presented is whether the defendant’s power under the agreement itself to put an end to it within the year—by discontinuing its sales ¡of beer in the New York area—took the agreement out of the operation of the statute.
It was long ago stated, and frequently repeated, that “ [i]t is not the meaning of the statute that the contract must be performed within a year. * * * if the obligation of the contract is not, by its very terms, or necessary construction, to endure for a longer period than one year, it is a valid agreement, although it may be capable of an indefinite continuance.” (Trustees of First Baptist Church v. Brooklyn Fire Ins. Co., 19 N. Y. 305, 307; see, also, Nat Nal Serv. Stas. v. Wolf, 304 N. Y. *176 332, 336; Ward v. Hasbrouck, 169 N. Y. 407, 419; Blake v. Voigt, 134 N. Y. 69, 72; Fairchild v. City & County Contract Co. 153 App. Div. 277, 282-283; Dresser v. Dresser, 35 Barb. 573, 576; Warner v. Texas & Pacific Ry., 164 U. S. 418, 434.) In other words, as another court expressed the matter, “ the statute only applies to agreements which are, by express stipulation, not to be performed within a year. It does not apply to an agreement which appears by its terms to be capable of performance within the year; nor to cases in which the performance of the agreement depends upon a contingency which may or may not happen within the year.” (Dresser v. Dresser, 35 Barb. 573, 577, supra.) And in Blake v. Voigt (134 N. Y. 69, supra), in which the plaintiff promised ‘ ‘ to cause to be consigned all the goods that I could influence to ’ ’ the defendant, with an option in either party to give notice of termination after seven months, this court wrote (p. 72):
“ The ultimate question, therefore, is whether a contract, which by the terms applicable to the leading subject thereof is not to be performed within a year, is taken out of the statute by the fact that it was a part of such contract that either party might rightfully terminate it within the year. It is contended that termination is not performance, but rather the destruction of the contract, and this is true where there is no provision authorizing either of the parties to terminate as a matter of right. Performance, however, is simply carrying out the contract by doing what it requires or permits.”[2]
Applying these principles to the present case, it is clear that the agreement asserted by the plaintiff does not fall within the ban of the Statute of Frauds. Although the parties may have expected the agreement to last over a long period, they contemplated its possible termination by action — unquestionably within the defendant’s power to take at any time —• discontinuing *177 its beer sales in the New York area.[3] That being so, the agreement did not, by its terms, “ of necessity extend beyond one year from the time of its making. ’' (Nat Nal Serv. Stas. v. Wolf, 304 N. Y. 332, 336, supra.) It is hardly necessary to say that, since envisaged by its terms, such an occurrence would amount to a performance permitted by the contract. As the court declared in Blake v. Voigt (134 N. Y. 69, 72-73, supra), it “ would be executed in a way that the parties agreed that it might be executed. The contingency did not defeat the contract, but simply advanced the period of fulfillment.” To state this in slightly different fashion, the parties contemplated two possibilities— a long-term distributorship in the plaintiff or a termination should the defendant decide to discontinue beer sales in the New York area. The first contingency is not, in the ordinary course, performable within a year, the second is. The existence of one of two contingencies performable within a year is sufficient to take the case out of the statute. (See, e.g., 2 Corbin, Contracts [1950], § 446; 3 Williston, Contracts [3d ed., 1960], §§ 495, 498, 498B.)
Quite different from the present are the cases upon which the defendant relies. Although the agreements there involved have *178 been labelled “ service ” contracts of “ indefinite duration ”, they might more accurately be termed agreements for commissions in procuring customers or orders. Performance under agreements such as these is dependent, “ not upon the will of the parties to the contract, but upon that of a third party.” (Zupan v. Blumberg, 2 N Y 2d 547, 550 [oral agreement to pay plaintiff commissions on all advertising accounts obtained for defendant so long as the account was active]; Martocci v. Greater N. Y. Brewery, 301 N. Y. 57, 62-63 [oral promise to pay plaintiff commissions on all sales made by defendant to customer obtained by plaintiff; no time limit]; Cohen v. Bartgis Bros. Co., 289 N. Y. 846 [oral agreement to pay plaintiff commissions on all orders placed by customer obtained by plaintiff at any time]). These cases differ from the present case and its predecessors in two important ways. First, the plaintiff was seeking commissions in perpetuity on orders from a customer or customers whom he had obtained for the defendant, the plaintiff’s part of the agreement having been completely performed when the customer was procured; thus, no continuing performance on the part of the plaintiff — with its lessened opportunity for fraud —was involved. Second, the agreement did not contemplate the possibility of termination by either contracting party. In such a situation, the court held in the Martocci case (301 N. Y. 57, supra) that the Statute of Frauds applied but, in so doing, made this significant statement: * ‘ If the terms of contract here had included an event which might end the contractual relationship of the parties within a year, defendant’s possible liability beyond that time would not bring the contract within the statute ” (p. 62). In sharp contrast, the agreement before us “ included an event ”—within the defendant’s control, i.e., its decision to cease selling beer in the New York area—“that [would] end the contractual relationship of the parties ” and, by that token, the defendant’s possible liability “ within a year ”. In addition, the present agreement, unlike the “ service contracts ”, was not a “ one shot ” affair; the plaintiff had a continuing duty of performance.
Nor does our decision in Nurnberg v. Dwork (12 N Y 2d 776, affg. 12 A D 2d 612) override or work a change in what has long been our settled rule. In that case, the plaintiff “ was to negotiate for the operation of retail outlets [for defendants] *179 in stores of [a third party], and the defendants were to pay to the plaintiff 1% of the gross retail sales of the defendants in said stores * * * if at any future time they establish concessions at [such] stores * * * so long as the concessions are maintained by the defendants ” (12 A D 2d 612, 613). Again, there was no continuing duty of performance by the plaintiff; in return for a single service, he was to receive a percentage of sales forever. It was this factor — present in the prior •“ service contract ” cases — which led us to conclude that the agreement was within the Statute of Frauds.[4]
Accordingly, since the present agreement was susceptible of performance within a year, it falls outside the bar of the Statute of Frauds. It follows, therefore, that the first cause of action may not be dismissed.
Nor, under such circumstances, is there any reason to disturb the Appellate Division’s order which, although granting the motion to dismiss the third cause of action, gave the plaintiff leave to serve an amended complaint. The allegations of that third count charge a conspiracy by all the defendant's, including Schmidt, not only to breach the agreement but also ‘ ‘ to defraud and cheat plaintiff out of its said business and the just fruits of its labor and expenditures ”. It is quite clear, as the defendant urges, that the plaintiff may not charge it with conspiracy to breach the agreement. “ [0]ne does not have a cause of action against another contracting party for conspiracy to breach the agreement between them ”. (Bereswill v. Yablon, 6 N Y 2d 301, 306; see, also, Warner Bros. Pictures v. Simon, 15 N Y 2d 836, affg. 21 A D 2d 863; Friedman v. Roseth Corp., 297 N. Y. 495; Miller v. Vanderlip, 285 N. Y. 116.) But it is equally plain that a contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract. (See, e.g., Rich v. New York Cent. & H. R. R. R. Co., 87 N. Y. 382, 398; Albermarle Theatre v. Bay *180 berry Realty Corp., 27 A D 2d 172, 176; Schisgall v. Fairchild Pub., 207 Misc. 224, 230.)
Such is the ease before us. The recitals that defendant Schmidt conspired with others to cheat and defraud the plaintiff are sufficient to make out a cause of action in tort against Schmidt, particularly in light of the plaintiff’s claim that that defendant had made it a distributor intending, after the plaintiff had established a market for the beer, to give its territory to another. In view of this, and in any event, we see no basis for disturbing the manner in which the Appellate Division exercised its discretion in disposing of the motion directed at the third cause of action. (See, e.g., Simson v. Satterlee, 64 N. Y. 657; see, also, Cohen and Karger, Powers of the New York Court of Appeals [1952], p; 596.)
The order of the Appellate Division should be affirmed, without costs, and the question certified answered in the affirmative.
Judges Burke, Bergan, Keating, Breitel and Jasen concur with Chief Judge Fuld; Judge Scileppi dissents and votes to modify on the opinion at Special Term.
Order affirmed, etc.

. On the other hand, the Appellate Division upheld Special Term’s dismissal of the third cause of action—upon defendant Schmidt’s motion to dismiss pursuant to CPLR 3211 (subd. [a], par. 7) —on the ground that it improperly combined a charge of conspiracy by defendant Schmidt and others to breach the agreement with a charge of conspiracy by that defendant to commit a tort, that is, to cheat the plaintiff and destroy its business. The plaintiff was, however, granted leave to serve an amended complaint so as to separately state an action against Schmidt “ cast in tort ” (see, infra, p. 180).

. “ The existence of a power to terminate the duty of further performance ”, Professor Corbin has written, “ does not take a case out of the statute, if the exercise of the power is itself a breach of the contract.” However, he added, “ Such is not the case where the contract itself creates the power of termination and the legal privilege of exercising it." (2 Corbin, Contracts [1950], p. 564; italics supplied.)

. It is true that the agreement under consideration does not call for termination upon notice by either party but only upon an event within the defendant’s control. There can be no doubt, though, that the underlying rationale is the same and many lower courts, as well as courts of other jurisdictions, have expressly: held the latter type of agreement outside the statute. (See, e.g., Platt v. Whitelawn Dairies, 2 A D 2d 683, affg. 3 Misc 2d 19 [plaintiff to receive commissions for introducing defendant to customer but “in the event the defendant ceased serving such customer for any reason whatsoever, the contract was to terminate upon payment to the plaintiff of all earned commissions ”]; Storer v. Ripley, 282 App. Div. 950 [oral agreement that plaintiff should be a director of a corporation as long as he and a third person owned stock in the corporation]; Krawitz v. Gross, 156 N. Y. S. 2d 576 [plaintiff’s employment to last “ so long as the theater was in operation ” by defendant]; see, also, Suslak v. Rokeach & Sons, 295 N. Y. 799, affg. 269 App. Div. 779; Nester v. Diamond Match Co., 143 F. 72; Sax v. Detroit, G. H. & M. Ry. Co., 125 Mich. 252; Hardison v. Belo Corp., 247 S. W. 2d [Tex.] 167, 168; cf. Belfert v. Peoples Planning Corp. of America, 11 N Y 2d 755; Supplee v. Hallanan, 14 Misc 2d 658, affd. 8 A D 2d 708, mot. for lv. to app. den. 7 N Y 2d 705 [these last two cases held agreements within statute where option to terminate was solely in plaintiff, the party seeking to enforce the agreement, and not in the party to be charged].)

. In view of the fact that Nürnberg was decided in this court without opinion, it is understandable that the Federal Court of Appeals for the Second Circuit erroneously construed our decision as requiring it to hold within the statute agreements which were to last “so long as” both parties remained in business. (See Ginsberg Mach. Co. v. J. & H. Label Processing Corp., 341 F. 2d 825, 827; Perrin v. Pearlstein, 314 F. 2d 863, 866; see, also, Dundee Wine & Spirits v. Glenmore Distilleries Co., 238 F. Supp. 283.)