William D. RILEY, Plaintiff,

v.

N.F.S. SERVICES, INC., Defendant.

No. 94 Civ. 1503 (JGK).

United States District Court,
S.D. New York.

July 17, 1995.

David B. Wechsler, Leonard B. Pack,
Wechsler & Bursky, LLP, New York City,
for plaintiff.

Vincent J. Syracuse, David A. Pellegrino, Newman Tannenbaum Helpern Syracuse & Hirschtritt, New York City, for defendant.

KOELTL, District Judge:

The plaintiff William Riley ("Riley") has brought this action to recover bonus compensation from his former employer NFS Services, Inc. ("NFS"). Specifically, he seeks to recover a portion of net profits earned by NFS as a result of a contract between NFS and The Equitable Life Assurance Society of the United States ("Equitable"). The profits were earned subsequent to Riley's leaving NFS. The plaintiff has brought claims for breach of contract, breach of an implied covenant of good faith and fair dealing, unjust enrichment (and quantum meruit) and willful violation of the New York Labor law.

NFS has moved for summary judgment, asserting that all of the plaintiff's claims are barred by the Statute of Frauds. Because issues of material fact exist with respect to whether the contract at issue is covered by the Statute of Frauds, the defendant's motion is denied.

### I.

Riley was hired as a Senior Vice President by NFS shortly after April 11, 1991 pursuant to a letter agreement dated April 11, 1991 ("Employment Agreement") that outlined the terms of his employment. (*See* Exh. A to Def.'s 3(g) Statement.) NFS is in the business of, among other things, asset recovery work.

Riley's employment status changed over the course of his tenure with NFS. On December 6, 1991, he resigned from his officer position and continued to perform the same functions for NFS in the capacity of a consultant. Riley became an employee of NFS again in March, 1992. He then resigned from NFS on July 2, 1992 and continued to render some services as a consultant.

While he was still employed by NFS, Riley worked to secure a contract between NFS and Equitable. This contract was not finalized at the time Riley resigned. In September of 1992, following his resignation, Riley attended a meeting between NFS and Equitable. NFS and Equitable ultimately entered into a contract that was dated November 4, 1992 ("NFS–Equitable contract") and was signed on November 5, 1992. Riley claims that he was instrumental in securing the NFS–Equitable contract because he had a relationship with Equitable and he was able to convince Equitable that the contract would be advantageous to it. (Compl. ¶ 15.)

Riley claims that he has a contractual right to a percentage of the profits earned by NFS subsequent to the termination of his employment as a result of the NFS–Equitable contract ("Riley–NFS contract"). He bases his claim both upon the provision in the Employment Agreement entitling him to "[b]onus money to be earned in your division at 20% on net profits after certain expenses are covered....", (Exh. A to Def.'s 3(g) Statement), and upon oral extensions of and modifications to the Employment Agreement.[1] NFS has moved for summary judgment.

---

1. Riley argues, in response to the defendant's motion, that his claim for bonus compensation is based on the written Employment Agreement and that, therefore, the Statute of Frauds does not bar his claims. However, as NFS argues, various statements in Riley's pleadings belie this position. For example, in the complaint, Riley asserts that he tendered his resignation effective July, 1992 only after having been assured by NFS's president that "a deal is a deal" and that he would receive his "agreed-upon compensation" with respect to the defendant's profits on the NFS–Equitable contract. (Compl. ¶ 16.) Similarly, in his 3(g) statement, Riley states that the terms of his employment, as set forth in the April 11, 1991 letter, continued to apply after March, 1992 in accordance with the parties' oral agreement. (Pl.'s 3(g)

Statement ¶ 21.) And, in his affidavit in opposition to the defendant's motion for summary judgment, Riley alleges that he "continued to rely on NFS's assurances that 'a deal is a deal' after [he] left NFS's employ, as demonstrated by [his] agreeing to participate in a meeting with Equitable in September 1992...." (Pl.'s Aff.Opp'n ¶ 5.) Finally, in the complaint, Riley contends that the defendant breached the terms of the written Employment Agreement, as well as the oral agreements between the parties. (Compl. ¶ 22.)

In disputing that he relies on oral agreements, Riley claims that he relies on the written Employment Agreement that was "orally acknowledged and confirmed on several occasions[.]" (Pl.'s Mem.Opp'n at 2–3.) However, based on the statements in his pleadings, for

## II.

■ Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue resolution." *Gallo*, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo*, 22 F.3d at 1223.

■ If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

## III.

■ The Statute of Frauds requires certain contracts to be memorialized in writing. *See* N.Y.Gen.Oblig.Law § 5–701(a) (McKinney 1989).[2] A motion for summary judgment based on the Statute of Frauds should be denied where issues of material fact exist with respect to whether a particular contract is covered by, or falls within, the Statute of Frauds. *See, e.g., Sussex Leasing Corp. v. US West Fin. Servs., Inc.*, 877 F.2d 200, 202–03 (2d Cir.1989) (reversing summary judgment because there was an issue of fact regarding whether the plaintiff was a finder or a principal for purposes of the Statute of Frauds); *Rabus v. Silentradio*, No. 90 Civ. 5037, 1992 WL 84586, *2 (S.D.N.Y. April 13, 1992) (Keenan, J.) (denying summary judgment on the basis of the Statute of Frauds where the "murky" record did not sufficiently demonstrate that the contract could not be

purposes of deciding the defendant's motion, it is appropriate to conclude that Riley's claims rest, at least in part, on alleged oral agreements with NFS.

At oral argument, counsel for Riley argued that the oral agreements and understandings merely confirmed that the written Employment Agreement continued to apply. For purposes of the defendant's motion, it is irrelevant whether the contract to pay Riley post-employment compensation is an independent oral agreement or an oral modification to or extension of the written Employment Agreement. Under any of these scenarios, if the contract for post-employment compensation could not, by its terms, be performed within one year, the

Statute of Frauds applies. *See, e.g., Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 379–80, 248 N.E.2d 576, 580, 300 N.Y.S.2d 817, 822 (1969) (oral extension of a contract within the Statute of Frauds also is required to comply with the Statute); *Klein v. Jamor Purveyors, Inc.*, 108 A.D.2d 344, 348, 489 N.Y.S.2d 556, 559 (2d Dep't 1985) (oral modification to a written contract fell within the Statute because it was made in anticipation of death).

**2.** The parties agree that New York law applies in this diversity action.

performed within one year); *Goldberg v. Select Indus., Inc.*, 202 A.D.2d 312, 314–15, 609 N.Y.S.2d 202, 204 (1st Dep't 1994) (questions of fact pertaining to whether the alleged contract could be performed within one year precluded summary judgment); *Super v. Abdelazim*, 108 A.D.2d 1040, 1041–42, 485 N.Y.S.2d 612, 613–14 (3d Dep't 1985) (summary judgment denied where the trier of fact could conclude both that the oral contract between the plaintiff and the defendant did not involve merely compensation for the negotiation of a business opportunity and that the contract could be completed within a lifetime).

Here, the defendant argues that two different provisions of the Statute of Frauds bar the plaintiff's claims—the provision pertaining to contracts that cannot be performed within one year and the provision pertaining to the negotiation of business opportunities. As discussed below, issues of material fact remain with respect to whether the Riley–NFS contract falls within either of these provisions making summary judgment inappropriate.

### A.

■ Section 5–701(a)(1) of the New York Statute of Frauds provides, in pertinent part:

Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking ... [b]y its terms is not to be performed within one year from the making thereof....

N.Y.Gen.Oblig.Law § 5–701(a)(1) (McKinney 1989). NFS argues that Riley's claims are barred by the Statute of Frauds because Riley's right to compensation continues indefinitely and, therefore, the Riley–NFS contract cannot be performed within one year. (Def.'s Reply Mem. at 7.)

■ The law is well-settled that for a contract to fall within this provision of the Statute of Frauds, there must be absolutely no possibility of performance of the contract within one year. *See, e.g., Ohanian v. Avis Rent A Car System, Inc.*, 779 F.2d 101, 106 (2d Cir.1985) ("The one-year provision has

been held not to preclude an oral contract unless there is 'not ... the slightest possibility that it can be fully performed within one year.'") (citing 2 Corbin on Contracts § 444, at 535); *Freedman v. Chemical Constr. Corp.*, 43 N.Y.2d 260, 265, 372 N.E.2d 12, 15, 401 N.Y.S.2d 176, 180 (1977) ("The critical test ... is whether 'by its terms' the agreement is not to be performed within a year.") (citations omitted); *Carmon v. Soleh Boneh Ltd.*, 206 A.D.2d 450, 451, 614 N.Y.S.2d 555, 556 (2d Dep't 1994) ("The relevant question is whether the contract can conceivably be performed within one year, rather than whether it is susceptible to termination within the year. Where there is absolutely no possibility in fact and law of full performance by both parties within one year, the Statute of Frauds bars enforcement of an oral contract.") (citations omitted), *leave to appeal denied*, 85 N.Y.2d 804, 650 N.E.2d 415, 626 N.Y.S.2d 756 (1995); *Mann v. Helmsley-Spear, Inc.*, 177 A.D.2d 147, 150, 581 N.Y.S.2d 16, 18 (1st Dep't 1992) (" 'The test ... is possibility or impossibility, rather than probability or improbability, of performance within the statutory period.'") (quoting 56 N.Y.Jur., Statute of Frauds, § 19).

NFS relies on a line of cases that involve contracts for commissions or service contracts. In these cases, the New York courts repeatedly have held that an oral agreement requiring a defendant to pay a plaintiff commissions on all future orders placed by customers that were procured by the plaintiff is a contract which, by its terms, is incapable of performance within one year. *See, e.g., Zupan v. Blumberg*, 2 N.Y.2d 547, 550–52, 141 N.E.2d 819, 820–22, 161 N.Y.S.2d 428, 429–32 (1957); *Martocci v. Greater New York Brewery, Inc.*, 301 N.Y. 57, 62–63, 92 N.E.2d 887, 889 (1950); *Cohen v. Bartgis Bros. Co.*, 264 A.D. 260, 35 N.Y.S.2d 206, 208 (1st Dep't 1942), *aff'd*, 289 N.Y. 846, 47 N.E.2d 443 (1943); *see also Apostolos v. R.D.T. Brokerage Corp.*, 159 A.D.2d 62, 64–65, 559 N.Y.S.2d 295, 297–98 (1st Dep't 1990).

The rationale of these cases is that, while the defendants' liability is contingent because it depends on the customers' placing orders, the defendants' potential liability endures indefinitely, bringing the contracts within the

Statute of Frauds. Moreover, the timing of performance is not controlled by the parties to the contracts, but rather is controlled by the customers, who are third parties to the contracts at issue. The uncertainty of the timing of performance brings these contracts within the Statute of Frauds. *See, e.g., Zupan*, 2 N.Y.2d at 550, 141 N.E.2d at 820, 161 N.Y.S.2d at 429 (explaining that the Statute of Frauds applies since "performance is dependent, not upon the will of the parties to the contract, but upon that of a third party[ ]"); *Martocci*, 301 N.Y. at 62, 92 N.E.2d at 889 ("The endurance of the defendant's liability is the deciding factor."); *Cohen*, 35 N.Y.S.2d at 208 ("Unlike contracts which require the performance of a single act which may or may not be executed within a year, the contract here requires the defendant, for an unlimited period of time, to pay commissions on orders accepted from [a third party], and, therefore, is impossible of performance within a year."); *see also Guterman v. RGA Accessories, Inc.*, 196 A.D.2d 785, 785, 602 N.Y.S.2d 116, 117 (1st Dep't 1993) ("Plaintiff's cause of action for breach of contract alleges an oral agreement under which he was to earn commissions not only on those particular orders placed through him but also on all orders and future orders generated by new accounts obtained through his efforts. Such an agreement is not capable of performance within a year, performance being dependent not upon the will of the parties to the oral contract but upon that of third parties, and is thus unenforceable under the Statute of Frauds.") (citation omitted); *Apostolos*, 159 A.D.2d at 64–65, 559 N.Y.S.2d at 297 ("[A] promise to pay commissions that extends indefinitely, dependent solely on the acts of a third party and beyond the control of the defendant, is within the Statute and must be in writing.") (citations omitted); *cf. Nat Nal Serv. Stations, Inc. v. Wolf*, 304 N.Y. 332, 336–40, 107 N.E.2d 473, 475–78 (1952) (in contrast to the contracts in *Martocci* and *Cohen*, the contract at issue did not, by necessity, extend beyond a one-year period).

NFS has not sufficiently demonstrated that the Riley–NFS contract, which provides for Riley's post-employment compensation, falls within these cases to justify summary judgment in NFS's favor. In contrast to the contracts involved in the commission cases that were infinite in their scope and duration because they covered all orders made by certain customers at any time in the future, the Riley–NFS contract has parameters. The NFS–Equitable contract, which defines the boundaries of the Riley–NFS contract, applies only to certain potential asset recovery claims.[3] It provides, in relevant part:

1.1 *Purpose.* NFS using information derived from its own data base with respect to payment levels of certain securities will review The Equitable's records relating to such securities and identify whether The Equitable failed to receive any payments on such securities to which it was entitled and assist The Equitable, if The Equitable so requests, in recovering the amounts of any underpayments....

2.1 *Identity of Claims.* NFS will notify The Equitable in writing from time to time of claims that in NFS's opinion could validly be made by The Equitable. For each such prospective claim, NFS will detail the facts and circumstances and will make a specific recommendation concerning collection. The Equitable will ... determine whether or not to make a claim and, if so, how and by whom.

(Exh. B to Pl.'s 3(g) Statement.) Despite NFS's argument that the scope of the NFS–Equitable contract is not limited because at any point, Equitable can ask it to pursue additional claims (and that, therefore, NFS's liability to Riley lasts indefinitely), a jury reasonably could conclude, based on the terms of the NFS–Equitable contract, that there would come a time at which NFS had pursued all of the claims that it had identi-

---

**3.** At oral argument, the defendant explained that it is contending that the existence of only the NFS–Equitable contract renders the Riley–NFS contract not performable within one year. The defendant argues that the NFS–Equitable contract has this effect on the Riley–NFS contract because the NFS–Equitable contract could continue to produce income for NFS indefinitely. NFS is not relying on any other contract it procured with Equitable or on any contract with another third party in support of its argument that the Riley–NFS contract cannot be performed within one year. (Tr. of Oral Argument at 10–12.)

fied, at the direction of Equitable, and the NFS–Equitable contract would be completed. At that time, NFS's potential liability to Riley would cease. And, that jury also would have a sufficient basis to conclude that the Riley–NFS contract, as it is defined by the NFS–Equitable contract, is not, by its terms, unachievable within one year. In other words, there are genuine issues of material fact with respect to the interpretation of the NFS–Equitable contract.

■ Issues of material fact remain with respect to the scope of the NFS–Equitable contract; correspondingly, issues of material fact remain with respect to the duration of NFS's liability to Riley and with respect to whether the Riley–NFS contract could be performed within one year. Therefore, the defendant's motion for summary judgment on the basis of this provision of the Statute of Frauds is denied.[4]

### B.

■ Section 5–701(a)(10) of the New York Statute of Frauds provides, in relevant part:

Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking ... [i]s a contract to pay compensation for services rendered in negotiating ... the purchase, sale, exchange, renting or leasing of ... a business opportunity.... 'Negotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction.

N.Y.Gen.Oblig.Law § 5–701(a)(10) (McKinney 1989). While only in its reply brief, the defendant nonetheless argues that Riley's claims also are barred by this provision of the Statute of Frauds.

In *Freedman v. Chemical Constr. Corp.*, 43 N.Y.2d 260, 372 N.E.2d 12, 401 N.Y.S.2d 176 (1977), the court held that an oral agreement under which the plaintiff was to negotiate a construction contract on the defendant's behalf in exchange for a fee was unenforceable under the Statute of Frauds. *Id.* at 267, 372 N.E.2d at 17, 401 N.Y.S.2d at 181. The court explained that § 5–701(a)(10) "applies to various kinds of intermediaries who perform limited services in the consummation of certain kinds of commercial transactions." *Id.* at 266, 372 N.E.2d at 16, 401 N.Y.S.2d at 180. In *Freedman,* the court found that the agreement by which the plaintiff "was to use his 'connections', his 'ability', and his 'knowledge' to arrange for [the defendant] to meet 'appropriate persons'" so that the defendant could procure a construction contract fell within the Statute of Frauds. *Id.* at 267, 372 N.E.2d at 16–17, 401 N.Y.S.2d at 181. The Court explained that where the "intermediary's activity is so evidently that of providing 'know-how' or 'know-who', in bringing about between principals an enterprise of some complexity or an acquisition of a significant interest in the enterprise," the Statute of Frauds applies. *Id.*

However, where the plaintiff's function transcends the limited role of serving as an intermediary, the Statute of Frauds does not apply. For example, in *Super v. Abdelazim,* 108 A.D.2d 1040, 485 N.Y.S.2d 612 (3d Dep't

---

**4.** Because issues of material fact remain with respect to whether both the NFS–Equitable contract and the Riley–NFS contract could be performed within one year, it is unnecessary to address any arguments with respect to NFS's asserted inability to terminate its contract with Riley. When both parties to a contract (or the party against whom enforcement of the contract is being sought) can terminate the contract rightfully (i.e., without breach), the contract, even though it can last indefinitely by its terms, can be performed within one year and thus falls outside of the Statute of Frauds. *See, e.g., North Shore Bottling Co., v. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 175–77, 239 N.E.2d 189, 190–92, 292 N.Y.S.2d 86, 88–90 (1968) (where the defendant could terminate its liability without breaching

the contract, the contract was considered to be capable of performance within one year, taking it outside of the Statute of Frauds); *Samilson v. Stahlwood Toy Mfg. Co.,* 154 A.D.2d 525, 526, 546 N.Y.S.2d 147, 148 (2d Dep't 1989) ("[I]f the contract creates a power to terminate the contract which is not dependent on the act of a third party, the exercise of that power is an alternate means of performance which could possibly take place within one year of the making of the contract."); *see also Murphy v. Gabelli*, No. 93 Civ. 1539, 1994 WL 560982, *5 (S.D.N.Y. Oct. 12, 1994) (Sand, J.) (where the power to terminate a contract is stated expressly, such power takes the contract outside of the Statute of Frauds), *modified on other grounds*, No. 93 Civ. 1539, 1994 WL 704779 (S.D.N.Y. Dec. 16, 1994) (Sand, J.).

1985), the plaintiff alleged that he and the defendant had entered into an oral agreement whereby the plaintiff was to perform all necessary services to find a suitable location and then to act as construction manager in converting a former school building into a medical office complex in exchange for a percentage of the cost of the building. *Id.* at 1040, 485 N.Y.S.2d at 613. After he was discharged, the plaintiff sued the defendant for money which he claimed the defendant owed him. *Id.* at 1041, 485 N.Y.S.2d at 613. In denying summary judgment for the defendant on the ground that the Statute of Frauds barred the plaintiff's claim, the court found that the plaintiff's allegations, if believed, established that he was to render a "wide variety of services" and that his function was not limited to "merely negotiating a business opportunity"; therefore, his claim was "broad enough" to survive the limitations of Section 5–701(a)(10). *Id.* at 1041–42, 485 N.Y.S.2d at 614.

In the present case, the jury reasonably could conclude that Riley's position consisted of more than his functioning as an intermediary. The Employment Agreement shows that Riley was not engaged for the limited purpose of negotiating a business opportunity; rather, it shows that Riley was hired, as a Senior Vice President, to head a new division of NFS and that he had numerous responsibilities for which he was paid a compensation package. Because issues of fact remain with respect to Riley's function at NFS, the defendant's motion for summary judgment on the basis of this provision of the Statute of Frauds is denied.[5]

For all of the foregoing reasons, the defendant's motion for summary judgment is denied.

**SO ORDERED.**

---

5. Because there are genuine issues of material fact with respect to whether the Statute of Frauds applies, it is not necessary to reach the issues of whether, if the Statute of Frauds does apply, the Employment Agreement would represent a sufficient writing and if not, whether the doctrines of part performance or promissory estoppel would apply.