09-3603-cv
Aegis v. Port Authority

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 21st day of June, two thousand ten.

Present:
   ROGER J. MINER,
   PIERRE N. LEVAL,
   RICHARD C. WESLEY,
      *Circuit Judges.*

_____

AEGIS INSURANCE SERVICES, INC., a/s/o
CONSOLIDATED EDISON COMPANY OF NEW YORK, et al.,
   *Plaintiff-Appellants*,

   v.            09-3603-cv

THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY,
   *Defendant-Appellee*s,

THE CITY OF NEW YORK,   *Defendant.*[*]

_____

[*] The Clerk of the Court is directed to amend the official caption to read as set forth above.

For Plaintiff-Appellants:    Franklin M. Sachs, Greenbaum, Rowe, Smith & Davis LLP, Iselin, NJ (Mark L. Antin, Gennet, Kallmann, Antin & Robinson P.C., New York, NY, *on the brief*)

For Defendant-Appellees:    Beth D. Jacob, Schiff Hardin LLP, New York, NY (Donald A. Klein, *on the brief*), for *Defendant-Appellee The Port Authority of New York and New Jersey*.

Mark A. Bloom, Arent Fox LLP, New York, NY, for *Defendant-Appellee The City of New York.*

Appeal from the United States District Court for the Southern District of New York (Hellerstein, *J.*).

**UPON DUE CONSIDERATION**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **VACATED in part**, **AFFIRMED in part**, and the case **REMANDED** to the district court for further proceedings consistent with this order.

Plaintiffs Consolidated Edison Company of New York, Inc. and its subrogated insurers (collectively, "Con Edison") appeal from a judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*), granting summary judgment to Defendant The Port Authority of New York and New Jersey ("Port Authority"). Con Edison's claims against Port Authority arise out of the destruction of the electrical substation housed at the base of 7 World Trade Center ("7WTC") when the building collapsed in the course of the terrorist attacks on September 11, 2001. Con Edison alleged, *inter alia*, (1) that Port Authority and its agents were negligent in connection with (a) the design and/or construction of 7WTC and (b) the installation and/or maintenance of certain diesel-fuel tanks intended to supply emergency backup power to the building (the "negligence claim"); and (2) that pursuant to a 1968 lease between the

2

parties, Port Authority was in any event contractually obligated (regardless of whether it had acted negligently) to reimburse Con Edison for certain expenses Con Edison incurred in rebuilding the electrical substation and replacing the substation equipment (the "reimbursement claim").[2] The district court granted summary judgment to Port Authority. The court concluded that Con Edison's right to reimbursement under the lease did not extend to damage to the substation occurring years after completion of construction, and that the comprehensive nature of the lease precluded a separate suit by Con Edison against Port Authority based on negligence. We review a district court's interpretation of contract provisions, and its award of summary judgment based thereon, *de novo. See Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 103–04 (2d Cir. 2001). For the reasons discussed below, we affirm the judgment in part and vacate in part.

We presume the parties' familiarity with the facts, procedural history of this case, and the issues presented on appeal, which we discuss only as necessary to explain our decision.

## I. Factual Background

### A. The Lease

Pursuant to a Lease Agreement dated May 29, 1968 (the "Lease"), Con Edison leased from Port Authority a trapezoidal parcel of land at Washington and Barclay Streets in lower

---

[2] Con Edison also appealed from the district court's grant of summary judgment to Defendant The City of New York. In its January 12, 2006 Opinion and Order, the district court concluded that the City was immune from suit under the New York State Defense Emergency Act of 1951, N.Y. Unconsol. Law § 9101 *et seq. Aegis Insur. Servs. v. Port Auth. of New York and New Jersey*, 468 F. Supp. 2d 508 (S.D.N.Y. 2006). After oral argument in this appeal, Con Edison and the City reached a settlement, and Con Edison's appeal as it related to any claims against the City was dismissed.

Manhattan for fifty years. Port Authority built an electrical power substation on the land for Con Edison to operate, to supply electricity to the then-new World Trade Center complex.

In Section 17 of the Lease, Port Authority agreed to "insure and keep insured the Substation Building to the extent of 100% of the replacement value thereof against such hazards or risks as may now or in the future be included under the standard [New York] form of fire insurance policy." Con Edison agreed to "pay the Port Authority annually an amount equal to the insurance premium or premiums paid by the Port Authority" for that coverage. In Section 18 of the Lease, Con Edison agreed to repair or rebuild the substation if it were ever damaged or destroyed, and Port Authority agreed to make the proceeds of the insurance coverage "available to [Con Edison] for the foregoing purposes." Thus, Con Edison was responsible for repairing or rebuilding the substation and for paying the insurance premiums (through Port Authority), and Port Authority would keep the substation insured and would pay any proceeds to Con Edison. In related litigation, Port Authority and its insurers agreed to value the cost of replacing the substation at $37.58 million.[3]

The lease anticipated that a new office tower—eventually 7WTC—would be built by Port Authority or its designee above the substation. In Section 8(a), Con Edison agreed that "the Port Authority may construct wholly or partially on, above or about the Substation Building additional stories, structures, buildings or improvements of whatsoever design, size and purpose as the Port Authority . . . determine[s]," and, in Section 8(b), Con Edison agreed that Port

---

[3] In its July 27, 2009 Opinion and Order, the district court directed Port Authority to make available immediately to Con Edison the $37.58 million amount, less a $20 million construction advance it had already made available. *In re Sept. 11 Litig.*, 640 F. Supp.2d 323, 332 (S.D.N.Y. 2009). Port Authority has not appealed from this ruling.

4

Authority's "exercise" of the "foregoing rights" would not give rise to a claim for "eviction . . . nor be made the grounds of any abatement of rental nor any claim or demand for damages, consequential or otherwise."

In Section 16 of the Lease—which is the focus of Con Edison's claim for reimbursement—Port Authority agreed to reimburse Con Edison in the event that Port Authority's "acts or omissions . . . in connection with the construction or maintenance" of 7WTC "caused" damage to the substation building or the substation equipment.

Finally, Section 40 of the Lease, entitled "Premises," provides in subparagraph (b) that Port Authority would not be liable for any personal or property damage on the leased premises (to the lessee or any third party), except when such "damage, injury, or death [is] due to the *negligence* of the Port Authority." J.A.-1892 (emphasis added). Section 40(b) further provides that "nothing in this subparagraph . . . shall be deemed to relieve the Port Authority of its obligations [to reimburse Con Edison] under Section 16 hereof." *Id.*

**B. 7WTC and its Tenants**

In 1980, Port Authority exercised its Section 8 rights by contracting with 7 World Trade Company, L.P. ("7WTCo.") to build 7 World Trade Center above the substation. Construction of the building was completed in 1987, with Salomon Brothers, an investment bank, as its primary tenant. Salomon Brothers installed certain diesel fuel tanks and generators in the building to supply emergency back-up power to its continuously operating trading floor. In 1996, the City of New York leased space in 7WTC to house the command center of its Office of Emergency Management ("OEM"), and installed a diesel fuel tank and generator on the first and seventh floors to supply emergency power to the command center.

5

**C. Events of September 11**

At 8:46 a.m. and 9:03 a.m. on September 11, 2001, terrorists flew two jet passenger airplanes into Towers One and Two (the "Twin Towers") of the World Trade Center complex. The Twin Towers burned and collapsed, streaming fire and debris over the complex and over 7WTC. 7WTC burned throughout the day. The building's own diesel fuel tanks assertedly fed the fires. An adjacent water main had burst (leaving no readily available water to fight the fires). Firefighters died inside the Twin Towers. Fearing collapse of 7WTC, the fire chief made the decision to let it burn and establish a perimeter. 7WTC collapsed at 5:20 p.m., destroying Con Edison's substation (but taking no lives).

In June 2004, Con Edison erected a new substation, as Sections 15 and 18 of the lease required it to do, and restored permanent electrical services to lower Manhattan. In 2006, Silverstein Properties, Inc. completed construction of a new, forty-two-story 7WTC above the substation, which became the first tower of the rebuilt World Trade Center complex.

**II. Negligence Claim**

The district court interpreted the Lease to preclude Con Edison from maintaining an action against Port Authority based on Port Authority's negligence in connection with construction or maintenance of 7WTC. This was error. Con Edison's negligence claim arises at least from Port Authority's independent duty, as owner of the leased premises, to exercise reasonable care to avoid damage to persons or property thereon, *see Duane Reade v. Reva Holding Corp.*, 30 A.D.3d 229, 236 (1st Dep't 2006) (concluding that separately pled negligent cause of action by lessee was "legally sufficient because defendants had a common-law duty, independent of any contractual obligation imposed by the lease, to exercise reasonable care in

6

[constructing a second story tower above the leased premises] . . . so as to avoid damaging the demised premises below and interfering with their use"); *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 551 (1992) ("[A] contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract." (quoting *North Shore Bottling Co. v. Schmidt & Sons*, 22 N.Y.2d 171, 179 (1968)), and there is nothing in the parties' lease revealing an intent to preclude such a claim.

Section 40(b) of the Lease, furthermore, implicitly recognized the availability of a negligence action by Con Edison against Port Authority to recover for damage to the leased premises. Section 40(b) is a broad exculpatory clause, relieving Port Authority from liability to Con Edison, or to any third party, for injury to persons or damage to property

> at any time in or about the [leased] premises, including but not limited to . . . injury, death, or damage from falling material, water, rain, hail, snow, gas, steam, dampness, explosives, smoke, radiation or electricity . . . from any part of the Facility or from any other place or quarter.

J.A.-1892. The exculpatory clause, however, contains an exception for cases when "said damage, injury, and death shall be due to the *negligence* of Port Authority." *Id.* (emphasis added). Accordingly, we read Section 40(b) as confirmation that Con Edison retained its right to sue Port Authority for negligent conduct causing damage to the premises. *See 747 Third Ave. Corp. v. Killarney*, 225 A.D.2d 375, 377 (1st Dep't 1996) (reading a virtually identical lease provision as "implicitly acknowledg[ing] the landlord's liability for its own negligence").

The district court interpreted Section 40(b) as contemplating a negligence action against Port Authority only "in certain, very limited, circumstances." The district court did not explain what it believed those circumstances were, but we can infer from its ruling that they did not

include damage resulting from negligence in connection with either the construction of 7WTC or the installation of the diesel fuel tanks in the building (which together allegedly resulted in the massive fire causing the building's collapse and the destruction of the substation). We do not think such a limited reading of the negligence exception is warranted.

In our view, the district court also erred in reading another part of Section 40(b) as intending to preclude a separate negligence action against Port Authority. Section 40(b) further provides that "nothing [in this section] shall be deemed to relieve Port Authority of its obligations under Section 16" (which provides for Con Edison's right to recover for damage to the substation caused by Port Authority "in connection with the construction or maintenance of [7WTC]," irrespective of any negligence by Port Authority). According to the district court's understanding, Section 16's provision for indemnification of Con Edison by Port Authority, irrespective of any negligence by Port Authority, inferentially ruled out any further right of action premised on Port Authority's negligence at least in designing or constructing the building. We disagree. We find no basis for reading Section 40(b)'s warning that it not be read to preclude an action under Section 16 as meaning that Section 16 provided Con Edison's *exclusive* basis for recovering against Port Authority—especially in view of Section 40(b)'s specification that its negation of liability of Port Authority does not apply when damage is "due to the negligence of Port Authority."[4] As discussed further below, we agree with the district court's

[4] The district court also relied on Section 8 of the Lease in support of its finding that a separate negligence claim was barred. According to the district court, this section of the lease "expressly disallows any tort damages that may exceed a recovery under Section 16 of the lease." We disagree. Section 8(b) provides that Port Authority's *exercise* of its Section 8(a) rights to build 7WTC shall not be "construed to be an eviction of the Lessee nor be made the grounds of any abatement of rental nor *any claim or demand for damages, consequential or*

8

conclusion that Section 16's no-fault right of reimbursement is limited in scope to damage that Con Edison's property sustains during periods of active construction or maintenance, provided that damage is caused by the acts or omissions of Port Authority or its agents. It follows from that conclusion and from Section 40(b), that Section 16 does not preclude Con Edison from suing Port Authority in tort where Port Authority's alleged negligence causes Con Edison's property to sustain damage outside the time of active construction or maintenance. This includes the claim that Port Authority negligently designed or constructed 7WTC in a way that eventually caused damage to Con Edison's property years after the completion of active construction. In short, we conclude it was error to read the parties' lease as precluding claims by Con Edison against Port Authority premised on Port Authority's negligence in connection with the construction of 7WTC or the installation of the diesel fuel tanks in the building.[5]

**III. Notice of Claim**

Notwithstanding the Lease's preservation of Con Edison's right to sue Port Authority for damages attributable to Port Authority's negligence, Port Authority contends that at least certain claims must be dismissed by reason of Con Edison's failure to comply with certain requirements

_otherwise_." J.A.-1865 (emphasis added). The provision is at least fairly read to mean that Con Edison may not contest, or bring a suit for damages based upon, Port Authority's "exercise" of the right to build 7WTC above the leased premises. However, we do not read Section 8 as barring an action for negligence, as expressly authorized in Section 40.

[5] Port Authority argues, in the alternative, that the terrorist attacks on 9/11, the collapse of Towers One and Two, and the fire department's decision to cease firefighting efforts at 7WTC were superseding causes operating to relieve Port Authority of any liability for damage to the substation (whether in contract or in tort). We believe this contention should be addressed by the district court in the first instance, which, prior to its grant of summary judgment in favor of Port Authority, delayed consideration of the question pending further factual development. Accordingly, we express no view on the merits, if any, of this contention.

of New York law for suits against the Port Authority. We agree.[6]

"The Port Authority, a bi-state agency created by a compact between New York and New Jersey, enjoyed sovereign immunity until 1951, when New York and New Jersey consented to suits against it" on the condition that certain prerequisites to suit are met. *Caceres v. Port Authority*, 631 F.3d 620, 624 (2d Cir. 2011). Section 7107 of New York's Unconsolidated Laws provides that the Port Authority's consent to be sued "is granted upon the condition that" any suit be "commenced within one year after the cause of action therefor shall have accrued," and further, that in any suit for the recovery or payment of money, "a notice of claim shall have been served upon the port authority" by the plaintiff at least sixty days before such suit is commenced. *See* N.Y. Unconsol. Laws § 7107 (McKinney 2000). Section 7108 details the requried content of the notice of claim:

> The notice of claim . . . shall set forth (1) the name and post office address of each claimant and of his attorney, if any, (2) *the nature of the claim*, (3) the time when, the place where and the manner in which the claim arose, and (4) the items of damage or injuries claimed to have been sustained so far as then practicable.

§ 7108 (emphasis added). Sections 7107 and 7108 constitute jurisdictional prerequisites to a suit against the Port Authority, and failure to comply with them "compels the dismissal of the action for lack of subject matter jurisdiction." *Giannone v. Port Authority*, 127 A.D.2d 818, 819 (2d Dep't 1987). Taken together, the provisions of Sections 7107 and 7108 require that any such suit for damages against the Port Authority must be brought within one year of the accrual of the

---

[6] We need not consider Port Authority's argument that Con Edison failed to provide timely and adequate notice of its reimbursement claim, as this argument is mooted by our affirmance of the district court's dismissal of the reimbursement claim based on the terms of the Lease.

10

claim and must be preceded by a notice specifying the nature of the claim at least sixty days prior to service of the complaint.

In September 2002, Con Edison instituted its suit against Port Authority. The suit alleged essentially two broad categories of negligence by Port Authority: (i) various forms of negligence related to the construction and placement of diesel fuel tanks, which assertedly fed the fire that ultimately consumed 7WTC and caused the destruction of Con Edison's power station; and (ii) negligence in connection with design and construction of 7WTC, which allegedly resulted in its collapse as a consequence of the fire.[7]

Con Edison preceded the commencement of the action by serving a notice of claim in June 2002. The notice of claim addressed in considerable detail Port Authority's alleged negligence as to the diesel fuel tanks and their role in causing the collapse of 7WTC. The June 2002 Notice, however, included no mention of an allegation of negligence in the design and construction of the building, which Con Edison later alleged made it vulnerable to collapse as a consequence of the fire. Port Authority therefore contends that, as to the allegations of negligent design or construction of the building, unrelated to the diesel fuel tanks, Con Edison failed to comply with the requirement to provide a prior notice of claim which sets forth the "nature of the claim."

We have identified no case law, specific to Section 7108, addressing the specificity with which a plaintiff must state the "nature" of its claim in order to satisfy the notice of claim

---

[7] The district court appears to have ruled in the course of the proceedings below that all of Con Edison's claims, including its negligence claim, accrued on September 11, 2001. Port Authority has not argued, at least in this Court, that Con Edison's negligence claim was untimely under Section 7107, and accordingly, we express no view on the question.

11

requirements of Section 7108. Illumination is provided, however, by precedent for other similar New York notice of claim provisions, such as General Municipal Law Section 50-e, which requires that prior to suit, a notice of claim be submitted to the municipality setting forth "the nature of the claim." New York courts have explained that the purpose of Section 50-e's requirement of a notice of claim is to permit the defendant to conduct a proper investigation and assess the merits of the claim. *Carhart v. Village of Hamilton*, 190 A.D.2d 973, 974 (3d Dep't 1993); *see O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 358 (1981) ("The test of the notice's sufficiency is whether it includes information sufficient to enable the city to investigate the claim."). Con Edison's notice describing Port Authority's negligence in the construction and placement of the diesel fuel tanks gave the Port Authority no warning of need to investigate claims asserting unrelated negligence in the design and construction of 7WTC, notwithstanding that the specification of negligence in the June 2002 Notice included the words "among other things."[8] A theory of liability not mentioned in the notice of claim generally may not be asserted by amendment or later in the litigation. *See Olivera v. City of New York*, 270 A.D.2d 5, 5–6 (1st Dep't 2000) (concluding that notice of claim for property damage did not give sufficient notice that motorist was also filing suit for personal injuries and refusing to permit amendment where alteration "would alter the substantive nature of claim").

Con Edison argues that its failure to give sixty days prior notice of its claims of negligent

---

[8] Nor do other non-diesel fuel related theories set forth in the notice of claim, such as "failing to keep and maintain a proper lookout and watch, . . . failing to set up proper safeguards, barriers and fire protection; failing to properly promulgate rules and regulations; failing to set up proper and adequate training programs; the negligent and careless training of the personnel of the City of New York," give notice of Con Edison's claims of negligent design.

12

design and construction of the building caused no conceivable harm to Port Authority, in that it pleaded the new theories within three months of its June 2002 Notice. It argues that a few months earlier awareness of its theories would have had no conceivable effect on Port Authority's preparation to defend against, or settle, Con Edison's claims. Con Edison is very likely correct that its delay from June to September of 2002 in giving Port Authority notice of its claims of defective design and construction of the building in no way prejudiced Port Authority in its preparation to defend against the claims. Nonetheless, this is immaterial. The requirement imposed by Sections 7107 and 7108 of prior notice of the nature of the claim is a jurisdictional prerequisite to suit against the Port Authority. Failure to comply is not excused by the fact that it causes Port Authority no harm. *See Lyons v. Port Authority*, 228 A.D.2d 250, 251 (1st Dep't 1996) ("The fact that the Port Authority may not have been prejudiced by the plaintiff's failure to comply with the statute is immaterial, since the requirement is jurisdictional and must be strictly construed." (internal citation omitted)); *see also City of New York v. Port Authority*, 284 A.D.2d 195 (1st Dep't 2001).

We conclude that Con Edison may prosecute its claims for negligence related to "negligent design, approval, inspection, installation, maintenance, operation, conduct and control of" the diesel fuel tanks at 7WTC, as well as any of the more ancillary acts of negligence identified in both the notice of claim and asserted in the Second Amended Complaint. However, claims of negligent design and construction of 7WTC, of which Port Authority was not reasonably notified by the June 2002 Notice, must be dismissed. We leave it to the district court to apply this rule to the various claims asserted in Con Edison's Second Amended Complaint.

**IV. Reimbursement Claim**

13

In view of our ruling that Con Edison retains its ability to sue for negligence, we find no error in the district court's conclusion that Section 16, when read in context of the Lease as a whole, provides for a no-fault right to reimbursement that is limited to damage sustained during or in the period reasonably following active construction or maintenance of the building, and that it was not intended to extend to a situation where, as alleged here, an outside event works in combination with an alleged latent design defect to cause damage to the building and its substructures years after construction has been completed. We note that the parties each had the opportunity to present to the court extrinsic evidence in support of their respective interpretations of the Lease, and we see nothing erroneous in the district court's finding that further discovery "would not add to the material facts relevant to interpretation of Section 16."

**V. Conclusion**

For the reasons stated above, the judgment of the district court is VACATED in part, AFFIRMED in part, and the case REMANDED for further proceedings consistent with this order. Port Authority's motion to strike portions of Con Edison's reply brief is denied as moot. Each party to the appeal will bear its own costs.


FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK